DR. LOCKSLEY S. HALL v. PIEDMONT PUBLISHING COMPANY, A CORPORA-
TION, AND DAVID V. LINER

No. 7923SC1003

(Filed 20 May 1980)

**Libel and Slander § 10— physician in mental commitment proceeding as public offi-
cial—necessity for showing malice in false statements**

> A physician in a mental commitment proceeding was a public official
> within the purview of the rule prohibiting a public official from recovering
> damages for defamatory statements relating to his official conduct in the
> absence of allegation and proof of actual malice in the making of the
> statements. Therefore, a directed verdict was properly entered for defendant
> newspaper publisher and defendant attorney in plaintiff physician's libel action
> based on the publication of newspaper articles concerning the questionable
> commitment of a man to a State mental hospital and depicting two doctors, in-
> cluding plaintiff, in a cartoon as rubber stamps where plaintiff failed to show
> malice on the part of defendants in publication of the articles.

APPEAL by plaintiff from *Grist, Judge*. Judgment entered 28
November 1979 in Superior Court, YADKIN County. Heard in the
Court of Appeals 17 April 1980.

Plaintiff brought this civil action against defendants seeking
damages for libel. The complaint alleged false statements concern-
ing plaintiff which were defamatory to plaintiff in his profession.
He alleged the corporate defendant published an article contain-
ing false and defamatory information given to it by the individual
defendant and that defendants knew or had reason to believe the
information was false.

On 16 April 1972, an article was published in the *Winston-
Salem Journal-Sentinel* entitled "Was Sane Man Railroaded?" The
article dealt with the commitment of a man to the State mental
hospital at Camp Butner under questionable circumstances.
Above the article was a cartoon portraying two doctors as rubber
stamps. Fictitious names were used and the geographic location
where the commitment was ordered was described no more fully
than as "a nearby county." Approximately eleven months later,
on 11 March 1973, another article appeared in the *Winston-Salem
Journal-Sentinel* entitled "Man Sues Over Commitment." This ar-
ticle reported on a suit filed in Forsyth County Superior Court by
Carlyle Booe, a former resident of Yadkin County, against his

wife, the Yadkin County sheriff, the Yadkin County Clerk of Court, a notary public and two physicians, one of whom was the plaintiff in this case, Dr. Locksley S. Hall. The article reported Booe's allegations contained in a complaint drawn by his attorney, the individual defendant in this case, David Liner. The complaint alleged improper commitment of Booe to the John Umstead Hospital. The 16 April 1972 and 11 March 1973 articles were written by different reporters. The suit brought by Booe ended with summary judgment for the two doctors which was affirmed by this Court. *Booe v. Hall*, 24 N.C. App. 276, 210 S.E. 2d 293 (1974).

Dr. Hall instituted this action against the publisher of the *Winston-Salem Journal-Sentinel* and Booe's attorney. Plaintiff's complaint alleges that while the 16 April 1972 article "withheld identity of the plaintiff," the 11 March 1973 article "identified the plaintiff as being one of the physicians referred to in the article published and circulated on April 16, 1972."

After filing answers and taking discovery, defendants moved for summary judgment which was granted by the trial court. In an unpublished opinion, the Court of Appeals reversed the trial court's entry of summary judgment for defendants. *Hall v. Piedmont*, 33 N.C. App. 637, 235 S.E. 2d 800, *cert. den.*, 293 N.C. 360, 238 S.E. 2d 149 (1977).

The action was tried before the Yadkin County Superior Court in May, 1979. Defendants moved for a directed verdict at the close of plaintiff's evidence which was granted. The trial court ruled plaintiff was a public official under the rule of *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L.Ed. 2d 686, 84 S.Ct. 710 (1964), which prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves actual malice in the making of the statement.

Plaintiff appeals from the granting of the directed verdict.

*McElwee, Hall, McElwee and Cannon, by John E. Hall, for plaintiff appellant.*

*Womble, Carlyle, Sandridge and Rice, by Charles F. Vance, Jr., and W. Andrew Copenhaver, for defendant appellee, Piedmont Publishing Company.*

*Roy G. Hall, Jr., and Zachary T. Bynum III, for defendant appellee, David V. Liner.*

VAUGHN, Judge.

It was plaintiff's burden to prove defamatory language on the part of defendants of or concerning plaintiff which was published to a third person causing injury to plaintiff's reputation *and* if the plaintiff was a public official or public figure, plaintiff must prove actual malice on the part of defendants. We hold that a directed verdict was properly granted for defendants because plaintiff was a public official and plaintiff has not shown actual malice on the part of defendants in the publication of any words possibly defamatory to plaintiff.

In *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L.Ed. 2d 686, 84 S.Ct. 710 (1964), the Court held that the First Amendment of the United States Constitution prohibited a public official from recovering damages for defamatory statements relating to his official conduct in the absence of both allegation and proof of actual malice in the making of the statement. The trial court in the case at hand concluded that plaintiff was a public official and that plaintiff failed to offer any evidence of actual malice on the part of defendants.

Under the rule of *New York Times*, plaintiff was a "public official." "[T]he 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of government affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 15 L.Ed. 2d 597, 605, 86 S.Ct. 669, 676 (1966). Plaintiff was a medical examiner in Yadkin County operating under the authority conferred to physicians in judicial commitment proceedings found in former G.S. 122-59, -63 and -65, which were repealed by the legislature effective 1 September 1973 and declared unconstitutional by this Court on 27 June 1973. 1973 N.C. Sess. Laws c. 762, s. 2; *In re Confinement of Hayes*, 18 N.C. App. 560, 197 S.E. 2d 582, *cert. den.*, 283 N.C. 753, 198 S.E. 2d 729 (1973). Some courts regard the physician in a mental commitment proceeding as a quasi-judicial officer. *See, e.g., Linder v. Foster*, 209 Minn. 43, 295 N.W. 299 (1940). Plaintiff was compensated for his services pursuant to G.S. 122-43. Then, as now, the statute referred to physicians as "officers" in the commitment process at least for purposes of compensation. Our courts have not characterized a physician acting in this capacity for purposes of the *New York Times* rule. A mental commitment proceeding is recog-

nized as a quasi-judicial proceeding in this jurisdiction and the physicians who provide affidavits are given an absolute privilege as to any defaming statement they make about the committed person. This privilege comes not as an officer but as a witness in a quasi-judicial proceeding. The physician has witness immunity and not official immunity from defamation suits. *Fowle v. Fowle*, 255 N.C. 720, 122 S.E. 2d 722 (1961); *Bailey v. McGill*, 247 N.C. 286, 100 S.E. 2d 860 (1957); *Jarmon v. Offutt*, 239 N.C. 468, 80 S.E. 2d 248 (1954). It is not, however, inconsistent with these cases to hold that physicians involved as plaintiff was in this case are public officials for purposes of the *New York Times* rule.

In upholding the trial court's ruling that plaintiff is a public official for purposes of the *New York Times* rule, we are consistent with other rulings in this jurisdiction on the subject. For purposes of the *New York Times* rule, a deputy sheriff and a taxicab inspector have been held to be public officials. *Dellinger v. Belk*, 34 N.C. App. 488, 238 S.E. 2d 788 (1977), *cert. den.*, 294 N.C. 182, 241 S.E. 2d 517 (1978); *Cline v. Brown*, 24 N.C. App. 209, 210 S.E. 2d 446 (1974), *cert. den.*, 286 N.C. 412, 211 S.E. 2d 793 (1975). While a doctor as medical examiner may not be very high in the hierarchy of government, he holds a position with the potential for great social harm if abused. Thus, independent interest in and comment on the qualifications and performance of a person holding that position is to be encouraged. The appropriate balance between freedom of speech as it relates to comments on the actions of a medical examiner in the performance of his duties and freedom from harassment to the person performing those duties is to declare that he is a public official.

We now turn to whether plaintiff as a public official has demonstrated "actual malice" on the part of defendants in the publication of any possibly defamatory statements. As stated in *New York Times*,

> The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.

376 U.S. at 279-80, 11 L.Ed. 2d at 706, 84 S.Ct. at 726; *see also Ponder v. Cobb*, 257 N.C. 281, 126 S.E. 2d 67 (1962). A plaintiff

must produce "clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for truth." *Gertz v. Welch*, 418 U.S. 323, 342, 41 L.Ed. 2d 789, 807, 94 S.Ct. 2997, 3008 (1974); *Beckly Newspapers Corp. v. Hanks*, 389 U.S. 81, 19 L.Ed. 2d 248, 88 S.Ct. 197 (1967). The reasonable prudent man standard is not to be used. *St. Amant v. Thompson*, 390 U.S. 727, 20 L.Ed. 2d 262, 88 S.Ct. 1323 (1968).

The issue thus on this appeal where a motion for directed verdict was granted at the close of plaintiff's evidence becomes whether the evidence in a light most favorable to plaintiff presents clear and convincing proof that defendants published false information "with knowledge that it was false or with reckless disregard of whether it was false or not." We hold that actual malice was not clearly and convincingly proven by plaintiff. The testimony of Dr. Hall and the reporter who wrote the article demonstrates the failure to meet the standard of proof of actual malice required for a defamation suit by a public official.

Dr. Hall did not know the reporters who wrote the articles in question. He offered no evidence of animosity on the part of defendant publisher or any of its employees. The only recollection plaintiff had of any animosity was sometime during the time he was a resident at Baptist Hospital between 1962 and 1966 when plaintiff argued with unknown reporters for defendant publisher about information to be released on patients to the press.

David DuBuisson, a reporter for defendant publisher, testified for plaintiff. He admitted that he wrote the article, "Was Sane Man Railroaded?" based upon information given him by a Winston-Salem attorney whom he considered reputable. Commitments to state mental hospitals and the procedure involved had interested DuBuisson before and he had written other articles on the subject. He learned from someone that Liner represented someone in a commitment case and he dropped by Liner's office to ask him some questions. DuBuisson did not recall that Liner gave him the real names as they were of no significance to him. He did not know Dr. Hall nor any of the others involved in the commitment proceeding. He did not check with the doctors involved because he did not know who they were. He had no serious doubts about the truth of the matters he published in the article. There was, therefore, no clear and convincing evidence of actual malice. A directed verdict was properly granted for the defendant publisher.

Proof of actual malice by a plaintiff-public official in defamation suits is a heavy burden. He has to prove a state of mind, and we do not think it an appropriate issue for summary judgment where defendant has the burden of showing the absence of an issue of actual malice. *See Hutchinson v. Proxmire*, 443 U.S. 111, 120 n. 9, 61 L.Ed. 2d 411, 422 n. 9, 99 S.Ct. 2675, 2680 n. 9 (1979). Indeed, summary judgment was reversed for defendants in this case in part for this very reason in the unpublished opinion filed 6 July 1977. At the directed verdict stage, however, the case is on a different footing with plaintiff having the burden of proving actual malice. Plaintiff has not met his trial burden of proof.

This reasoning which supports a directed verdict for the defendant publisher would also support a directed verdict for defendant Liner. The evidence does not show clearly and convincingly that he acted with actual malice. None of the testimony demonstrates actual malice on his part.

Defendant Liner also maintains a directed verdict for him was proper because the claim was barred by the statute of limitations. We need not decide that question in light of our holding that plaintiff is a public official who has not shown actual malice.

For the reasons stated, directed verdict in favor of defendants is affirmed.

Affirmed.

Judges CLARK and MARTIN (Harry C.) concur.