VIRGINIA TYSON AND ROSE BENNETT v. L'EGGS PRODUCTS, INC., EDNA M. GOODWIN, RAYMEL COLLINS, ESSIE KNIGHT, MARY LANDON, BETTIE MARKS, MARGARET ROGERS, JOYCE HENRY, PATSY MITCHUM, DEBBIE KING, IDA MCNEILL, WILMA BAILEY, NAN DAVIS, NANCY ARNETTE, SANDRA STEWART

No. 8620SC268

(Filed 20 January 1987)

1. **Process § 13— foreign corporation—d/b/a L'eggs Products, Inc.—initial service on agent for Leggs, Inc.**

    Plaintiffs did not sue the wrong corporation for defamation, but merely sought service on the wrong agent, and their complaint was not barred by the statute of limitations by the time an alias and pluries summons issued, where plaintiffs named as corporate defendant "L'eggs Products, Inc." but initially directed the summons to the registered agent for "Leggs, Inc.," an unrelated corporation. L'eggs Products, Inc. was an assumed and registered name for Consolidated Foods, a Maryland corporation, which changed its name to Sara Lee. The captions of the complaint and summons plainly named as defendant L'eggs Products, Inc., the summons was directed to the corporate defendant in care of the agent, and the same paragraph which described defendant as a North Carolina rather than Maryland corporation also described defendant as having its principal place of business in Winston-Salem and as operating a place of business in Richmond County, which was true of L'eggs Products but not of Leggs.

2. **Rules of Civil Procedure § 4; Process § 5.1— foreign corporation—properly sued in assumed name**

    Sara Lee Corporation was adequately served with sufficient legal process under its assumed name, "L'eggs Products, Inc.," where L'eggs Products, Inc. was the registered assumed name in North Carolina for Consolidated Foods, which changed its name to Sara Lee before the complaint was filed but which

1

did not register an amendment to its assumed name registration until after the complaint was filed. The company was actively conducting business as "L'eggs Products, Inc." and holding itself out to the public and to its employees by that name; while plaintiffs might have unearthed defendant's true identity with more effort, a search of the appropriate records would have revealed only the erroneous description of L'eggs Products as an assumed name of Consolidated Foods; and service of an alias and pluries summons was eventually accomplished upon Sara Lee's Vice President of Manufacturing in its L'eggs Products Division. Under the circumstances, there was no substantial confusion concerning the identity of the intended defendant and defendant was not misled or prejudiced.

### 3. Libel and Slander § 16— libel—letter to editor—dismissal proper

The trial court properly dismissed a defamation action where two employees of the corporate defendant wrote a letter to the editor of a local newspaper to voice their opinions concerning the work-related nature of employee tendonitis at the corporate defendant's manufacturing plant; the allegedly defamatory response was circulated among employees of the mill, was signed by the individual defendants and twenty-three other employees, and was mailed to the newspaper; plaintiffs' complaint did not allege that the letter was susceptible of two meanings; the letter was not defamatory *per se* when considered in its entirety; and the letter was not libel *per quod* because it was published in the context of an ongoing public controversy.

Judge PHILLIPS concurs in the result.

APPEAL by plaintiffs from *Freeman, Judge*. Judgment entered 18 December 1985 in Superior Court, RICHMOND County. Heard in the Court of Appeals 26 August 1986.

*Patrice Solberg for plaintiff appellants.*

*Parker, Poe, Thompson, Bernstein, Gage & Preston, by Max E. Justice and William L. Brown for the individual defendant appellees.*

*Charles Y. Lackey and Constangy, Brooks and Smith, by Edward Katz and Terry Price for the corporate defendant appellee.*

BECTON, Judge.

I

This is a civil action for damages brought by Virginia Tyson and Rose Bennett against their employer, L'eggs Products, Inc. (the corporate defendant) and fourteen fellow employees (the individual defendants), based upon an allegedly defamatory letter. Sara Lee Corporation, of which L'eggs Products is a division, by

special appearance moved to dismiss the suit as to the corporate defendant under Rule 12(b) for lack of jurisdiction, insufficiency of process and of service of process, and failure to state a claim for which relief could be granted, upon the grounds that L'eggs Products is not a legal entity capable of being sued in North Carolina. The individual defendants, in their Answer, moved to dismiss the action pursuant to Rule 12(b)(6) for failure to state a claim. The trial judge, after considering the pleadings, attached exhibits, affidavits related to jurisdiction and service of process, briefs, and memoranda of all parties and the arguments of counsel, found that the defendants were entitled to judgment as a matter of law and granted the motions of all the defendants. Plaintiffs appeal. We affirm.

## II

We first consider the position of the corporate defendant in this action. The sole issue raised in the parties' brief is whether the corporate defendant's motion to dismiss was properly granted on the grounds that it is not a legal entity capable of being sued in North Carolina.

## A

These are the relevant facts. On 27 July 1981, Consolidated Foods Corporation, a Maryland corporation, registered its assumption of the assumed name "L'eggs Products, Inc." with the Register of Deeds of Richmond County, North Carolina. On 2 April 1985, Consolidated Foods changed its name to Sara Lee Corporation (Sara Lee), and retained the assumed name "L'eggs Products, Inc." for its L'eggs Products Division. An Amendment to Assumed Name registration reflecting these changes was executed on 3 April 1985 but was not filed with the Richmond County Register of Deeds until 5 July 1985.

The letter upon which this action is based was allegedly publicized in early June 1984. On 6 June 1985, plaintiffs filed the Complaint, and their summons was issued. In addition to the fourteen individual defendants, the captions of the Complaint and summons named as corporate defendant, "L'eggs Products, Inc." The summons was directed to "L'eggs Products, Inc. c/o Registered Agent Proctor-Wayne Leggett, Route 2, Box 340, Fairmont, North Carolina 28340."

Proctor-Wayne Leggett is the registered agent for a corporation named "Leggs, Inc." which is a for-profit North Carolina corporation located in Fairmont, North Carolina and which is in no way related to Sara Lee or its L'eggs Products Division. The registered agent for Sara Lee (formerly Consolidated Foods) in North Carolina is and was C.T. Corporation System, Wachovia Bank Building, 100 South Corcoran Street, Durham, North Carolina.

In the Complaint the plaintiffs alleged: "Upon information and belief Defendant L'eggs Products, Inc. is a for-profit corporation organized under the laws of the State of North Carolina with its principal place of business at Winston-Salem, North Carolina, and owns a place of business in Richmond County, North Carolina, where it manufactures products for sale throughout North Carolina."

On 5 July 1985, Sara Lee, by special appearance and through counsel, served its motion to dismiss the defendant L'eggs Products, Inc. under Rules 12(b)(2), (4), (5), and (6) on account of lack of jurisdiction, insufficient process and service of process, and failure to state a claim for which relief can be granted. Thereafter, on 15 July 1985, the Amendment to Assumed Name Registration which was executed earlier in April of 1985 was filed with the Richmond County Register of Deeds.

On 14 August 1985, an Alias and Pluries Summons was issued, and directed to be served on "L'eggs Products, Inc., c/o Bill Flinchum, Post Office Box 2495, Winston-Salem, North Carolina 27102." William F. Flinchum is Sara Lee Corporation's Vice-President of Manufacturing in its L'eggs Products Division. The record contains the registry receipt, showing actual receipt of the complaint and summons by the defendant. On 23 September 1985, Sara Lee Corporation renewed its motion to dismiss the corporate defendant.

B

[1]   1. First, defendant's counsel contends that plaintiffs actually sued Leggs, Inc., the wrong corporation. As a result, their claim would be barred by the statute of limitations by the time the alias and pluries summons issued, even assuming the second summons cured the error by substituting the correct party. In support of its contentions, the defendant points to (1) the direction of

the summons to defendant "c/o Registered Agent, Proctor-Wayne Leggett," and (2) the allegation in the complaint that the defendant "is a for-profit corporation organized under the laws of the State of North Carolina." Because Proctor-Wayne Leggett is the registered agent for a for-profit North Carolina corporation called Leggs, Inc., defendant concludes that plaintiffs intended for the trial court to exert jurisdiction over Leggs, Inc. We disagree.

In *Wiles v. Welparnel Construction Co.*, 295 N.C. 81, 243 S.E. 2d 756 (1978), the court held that a summons directed to the registered agent of a corporation is not defective if the captions of the summons and complaint clearly indicate that the corporation, and not the agent, is the intended defendant. In the case *sub judice*, the captions of the complaint and summons plainly named as defendant "L'eggs Products, Inc.," *not* "Leggs, Inc." Moreover, unlike the summons in *Wiles* which was addressed directly to the agent, this summons was directed to the corporate defendant *in care of* the agent. Therefore, Rule 4(b) of the Rules of Civil Procedure, which requires that a summons "be directed to the defendant," has been satisfied.

Furthermore, the erroneous description in the Complaint of defendant as a North Carolina corporation, rather than a Maryland corporation, is not sufficient grounds to find that Leggs, Inc. was the intended defendant. This is especially true since the same paragraph of the Complaint describes the defendant as having its principal place of business in Winston-Salem and as operating a place of business in Richmond County, both allegations which are true of L'eggs Products, Inc. but not of Leggs, Inc.

We conclude that plaintiffs did not sue the wrong corporation but merely sought service on the wrong agent. The function of an alias and pluries summons is to keep a lawsuit alive and maintain the original date of the commencement of the action when the original summons has not been properly served upon the original defendant named therein. *See Roshelli v. Sperry*, 63 N.C. App. 509, 305 S.E. 2d 218, *cert. denied*, 309 N.C. 633, 308 S.E. 2d 716 (1983). Thus plaintiffs' suit was properly instituted against L'eggs Products, Inc. within the statute of limitations period and was kept alive by the alias and pluries summons until service was properly made upon a corporate officer.

[2]  2. The corporate defendant's second position is that because L'eggs Products, Inc. is only a division of Sara Lee without separate corporate status, plaintiffs' action is directed against a legal nonentity which is incapable of being sued. Defendant further asserts that the failure of the Complaint and summons to name Sara Lee as defendant precludes the court from asserting jurisdiction over Sara Lee, and that any later attempt to do so constitutes an improper substitution of parties which is barred by the statute of limitations.

In its brief the defendant discusses a number of cases involving the relation back of amendments and the correction of misnomers which are inapposite to this case. For example, defendant cites *Teague v. Asheboro Motor Co.*, 14 N.C. App. 736, 189 S.E. 2d 671 (1972) to support its proposition that a plaintiff may not amend its summons and Complaint to substitute another party for a nonexistent corporation as defendant. In that case, the intended corporate defendant had changed its name from "Asheboro Motor Company, Inc." to "Rabb and York, Inc." and a new, unrelated corporation had assumed the company's old name. Thus, when plaintiff sued "Asheboro Motor Company, Inc." he literally sued the wrong legal entity and an amendment would have involved substituting an entirely new party after the statute of limitations had run.

In *Crawford v. Aetna Casualty and Surety Co.*, 44 N.C. App. 368, 261 S.E. 2d 25 (1979), *cert. denied*, 299 N.C. 329, 265 S.E. 2d 394 (1980), the Complaint and summons named as defendant "Michigan Tool Company, a Division of Ex-Cell-O Corporation" and were served upon an officer of Ex-Cell-O. In fact, Michigan Tool Company was not a division of Ex-Cell-O but was a separate corporate entity which had been acquired and later dissolved by Ex-Cell-O. Accordingly, plaintiff's amendment deleting "Michigan Tool Company, a Division of" was improperly allowed because it, in effect, substituted a new defendant that had never been properly served.

*Teague* and *Crawford* are easily distinguished from the present case. In both those cases there was some attempt to substitute one legal entity for another as defendant, whereas in the case at bar we are concerned with only one legal entity which uses two names.

In *Park v. Sleepy Creek Turkeys, Inc.*, 60 N.C. App. 545, 299 S.E. 2d 670 (1983), one defendant was a sole proprietorship which operated under the assumed name, "Amchick Associates," to which the summons and Complaint were addressed. The court did not address the propriety of suing the defendant under its assumed name. Plaintiff's critical error was in serving process upon the executive manager of the business, a method of service which is proper for an unincorporated association but insufficient for a sole proprietorship. By way of contrast, in the case *sub judice*, service of process was properly accomplished by way of certified mail upon an officer of the corporate defendant as provided by Rule 4(j)(6) of the Rules of Civil Procedure.

The other cases relied upon by the defendant are equally inapplicable to the present action. The true issue raised by these facts, and one for which there is no precedent in North Carolina, is whether a corporation may properly be sued in its assumed name.

"It seems to be universally recognized that a corporation may do business under an assumed name, or a name differing from its true corporate name." Annot., 56 A.L.R. 450 (1928). Moreover, there is some authority that a corporation may be sued under its assumed name or trade name. *See Hutcheson Memorial Tri-County Hospital v. Oliver*, 120 Ga. App. 547, 171 S.E. 2d 649 (1969).

North Carolina Gen. Stat. Sec. 66-68 (1985) requires a certificate of assumed name to be filed "before a corporation engages in business in any county other than under its corporate name." The object of the statute is "to require notice to be given to the business world of the facts required to be set out in the certificate, to the end that people dealing with a firm may be fully informed as to its membership and know with whom they are trading. . . ." *Security Finance Co. v. Hendry*, 189 N.C. 549, 553, 127 S.E. 2d 629, 631 (1925).

At the time plaintiffs instituted this action, Sara Lee Corporation had not complied with this statute. The company was actively conducting business as "L'eggs Products, Inc." and holding itself out to the public and to its employees under that name. Admittedly, with greater effort the plaintiffs might have unearthed the true identity of "L'eggs Products, Inc." However, a search of

the appropriate records would have revealed only the erroneous designation of "L'eggs Products, Inc." as an assumed name of Consolidated Foods. Furthermore, service of process was accomplished upon Sara Lee's Vice President of Manufacturing in its L'eggs Products Division, a corporate agent who might be expected to know that "L'eggs Products" is a name used by Sara Lee.

Under these circumstances, we do not believe that any substantial confusion existed concerning the identity of the intended defendant nor that the defendant was misled or prejudiced. On these facts we therefore conclude that Sara Lee Corporation was adequately served with sufficient legal process under its assumed name, "L'eggs Products, Inc." and that the trial court had jurisdiction.

The corporate defendant belabors the fact that the plaintiffs never sought leave to amend their summons and complaint after acquiring actual notice of the defendant's true legal identity. In *Paramore v. Inter-Regional Financial Group Leasing Co.*, 68 N.C. App. 659, 662, 316 S.E. 2d 90, 91 (1984), this Court reiterated the rule that when a misdescription "does not leave in doubt the identity of the party intended to be sued, or, even where there is room for doubt as to identity, if service of process is made on the party intended to be sued, the misnomer or misdescription may be corrected by amendment *at any stage of the suit*." (Emphasis added.) We are cognizant of the need for accurate naming of parties when instigating legal proceedings. However, since the plaintiffs have sued and served the appropriate party, their delay in substituting the correct name of that party is not fatal.

Having determined that the trial court had jurisdiction over the corporate defendant, we nevertheless affirm the court's dismissal of the action against it. Plaintiffs' sole allegations regarding this defendant are that the individual defendants circulated the allegedly defamatory letter at its place of business with the knowledge and permission of plant supervisors, and acted as agents of the corporate defendant in publishing the letter. Thus, any liability of the corporate defendant must be entirely derivative. For reasons discussed hereafter in Section III, we conclude that the letter in question is not defamatory and that the plaintiffs' suit against the individual defendants was properly dismissed. Consequently, dismissal of the corporate defendant was also proper.

### III

We next address the propriety of the judgment for the individual defendants. The pertinent facts are as follows.

### A

Virginia Tyson and Rose Bennett wrote a letter to the editor of the Richmond County Daily Journal which was published on the editorial page on 2 May 1984. The purpose of the letter was to voice their opinions concerning a controversy over the work-related nature of employee tendonitis at the Richmond County manufacturing plant where the plaintiffs and the individual defendants are employed. The plaintiffs' letter specifically attacked an article released to the press by their employer which summarized findings of a medical study of the tendonitis issue and concluded that tendonitis was not a work-related condition. In their letter, the plaintiffs accused their employer of inaccurately quoting the findings of the study, of down-playing the recommendations made, of being irresponsible and failing to admit the truth, of denying all Workers' Compensation claims, and of ridiculing the complaints of many employees and telling them not to report their injuries. The plaintiffs further stated that "there are numerous other employees, mostly ladies, who are experiencing job-related tendonitis symptoms but who are afraid to make any complaints not only because of fear of losing their job but also because of the intimidation which will come down from management." They indicated a hope that their letter would raise "public awareness" of the issue.

On 31 May 1984 the plaintiffs also appeared on a WSOC-TV (Charlotte, North Carolina) news report to voice their opinions on the tendonitis issue.

The plaintiffs' comments raised company, if not public, awareness. On June 5 and 6, 1984 the allegedly defamatory letter was circulated among employees of the Richmond County mill and was signed by the individual defendants in addition to 23 other employees who were not made defendants in this action. This letter expressly referred to "an article in your paper from two ladies employed by L'eggs Products" which "told of terrible working conditions and of women being afraid to report injuries," and responded directly to these assertions as "a bunch of hog wash."

The individual defendants expressed skepticism regarding the numbers of employees claimed to experience tendonitis symptoms, challenging them to "come out of the woodwork and speak their own minds," and caustically criticized "some people" who "want the money but don't want to work for it." The letter strongly disagreed with the plaintiffs' assertions of employee mistreatment and claimed that "the majority of the employees feel this is one of the best companies anyone could work for."

The letter signed by the individual defendants was placed in the mail on 6 July 1984 by an unspecified person, and was received by the Richmond County Daily Journal on 7 June 1984, and by WSOC-TV on 8 June 1984.

B

Rule 12(b) of the Rules of Civil Procedure provides that a motion to dismiss for failure to state a claim is converted to a Rule 56 motion for summary judgment when matters outside the pleadings are presented to and not excluded by the court. *Stanback v. Stanback*, 297 N.C. 181, 254 S.E. 2d 611 (1979). Because the record indicates that the trial judge considered matters outside the pleadings, we must review the court's decision as if it were a ruling on a motion for summary judgment.

Summary judgment is appropriate whenever there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law. The purpose of the rule is to "eliminate the necessity of a formal trial where only questions of law are involved and a fatal weakness in the claim or defense of a party is exposed." *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 642, 281 S.E. 2d 36, 40 (1981).

C

[3] Although the pleadings and briefs of the parties raise a number of grounds upon which the trial judge's ruling might have been based, the judgment dismissing the complaint fails to state the grounds upon which dismissal was considered appropriate. The individual defendants first argue that the letter at issue is not defamatory as a matter of law. We agree and therefore find it unnecessary to address any other contentions of the parties.

In order to recover for defamation, a plaintiff must allege and prove that the defendant made false, defamatory statements of or

concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation. *Hall v. Publishing Co.*, 46 N.C. App. 760, 266 S.E. 2d 397 (1980). Because we find that the letter signed by the defendants is not defamatory, a fatal weakness exists in the plaintiffs' claim which entitles the defendants to summary judgment.

North Carolina courts recognize three classes of libel:

(1) Publications which are obviously defamatory and which are termed libels *per se*; (2) publications which are susceptible of two reasonable interpretations, one of which is defamatory and the other is not, and (3) publications which are not obviously defamatory, but which become so when considered in connection with innuendo, colloquium and explanatory circumstances. This type of libel is termed libel *per quod.*

*Flake v. Greensboro News Co.*, 212 N.C. 780, 785, 195 S.E. 55, 59 (1938); *see also Arnold v. Sharp*, 296 N.C. 533, 537, 251 S.E. 2d 452, 455 (1979); *Cathy's Boutique v. Winston-Salem Joint Venture*, 72 N.C. App. 641, 325 S.E. 2d 283 (1985).

In the present case, the complaint is insufficient to state a claim for libel within the second class because the complaint does not allege that the letter is susceptible of two meanings. *See Renwick v. News and Observer Publishing Co.*, 310 N.C. 312, 312 S.E. 2d 405 (1984); *Cathy's Boutique*. Therefore, we must determine whether the offending letter is capable of supporting an action for libel *per se* or libel *per quod.*

1. Libel *Per Se*

Plaintiffs allege in their complaint that the letter's publication "was intended to discredit plaintiffs, implying that they were liars and malingerers" and that the persons who received the letter understood it to have this meaning. In their brief they point to the following statements in the letter in support of their claim: "The two ladies who sent the letter in have always been out of work for numerous reasons . . . We are not saying that there is nothing wrong with these ladies, we definitely think that there is." Plaintiffs further emphasize the defendants' response to the plaintiffs' claims of terrible working conditions and intimidation of workers: "This in our opinion is a bunch of hog wash . . . We

know the difference between reality and fantasy." The plaintiffs conclude that the letter when read in its entirety *clearly states* that they are "liars and deadbeats who expect to receive 'a free giveaway program all of their lives.'" We disagree.

In *Flake v. Greensboro News Co.* our Supreme Court summarized the law of libel *per se*:

> . . . [d]efamatory words, to be libelous *per se* must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided. . . .
>
> . . .
>
> The question always is how would ordinary men naturally understand the publication. (Citation omitted.) The fact that supersensitive persons with morbid imaginations may be able, by reading between the lines of an article, to discover some defamatory meaning therein is not sufficient to make it libelous. (Citation omitted.)
>
> In determining whether the article is libelous *per se* the article alone must be construed, stripped of all insinuations, innuendo, colloquium, and explanatory circumstances. The article must be defamatory on its face 'within the four corners thereof.' (Citations omitted.)

*Id.* at 786-87, 195 S.E. at 60.

Applying these principles, we conclude that the letter giving rise to this appeal is not defamatory *per se*. When viewed "within the four corners thereof" and stripped of all innuendo and explanatory circumstances, the letter is not of such nature that the court can presume as a matter of law that it is injurious to the reputations of the plaintiffs. On the contrary, when considered in its entirety, the letter's overall thrust is not a personal attack upon the plaintiffs but a hearty declaration of disagreement with the plaintiffs' views and an explicit expression of anger toward an unnamed "handful of employees" who "are trying to ruin a company that has been good to its employees over the years." The obvious intent of the publication is to defend the defendants' jobs

and employer and to inform the reader that they, and not the plaintiffs, represent the views of the majority of employees.

    2. Libel *Per Quod*

    Although the plaintiffs maintain in their Brief that the letter is libelous *per se*, the Complaint alleges special damages and innuendo. Therefore, we must determine whether the letter is reasonably susceptible of the libelous construction which plaintiffs place upon it by way of innuendo so as to constitute libel *per quod*.

    We acknowledge that whenever an allegedly defamatory publication is ambiguous or capable of a meaning other than the obvious one, it is for the jury to determine how it was understood by the recipient. However, it is the province of the court to determine in the first instance whether a communication is *capable* of a defamatory meaning. *Bell v. Simmons*, 247 N.C. 488, 495, 101 S.E. 2d 383, 388 (1958). In determining whether a published article is libelous, it must be read and considered in its setting. *Yancey v. Gillespie*, 242 N.C. 227, 230, 87 S.E. 2d 210, 212 (1955). The circumstances of the publication are pertinent, as well as the hearers' knowledge of facts which would influence their understanding of the words used. *Oates v. Wachovia Bank and Trust Co.*, 205 N.C. 14, 17, 169 S.E. 869, 871 (1933).

    The defendants' letter was signed and published in the context of an ongoing public controversy regarding the tendonitis issue. Its production was a direct response to the plaintiffs' own statements which by their nature invited response, and which were published on the editorial page of the local newspaper, a forum in which plaintiffs knew others would have an opportunity to state a contrary view. "Everyone has a right to comment on matters of public interest and concern, provided he does so fairly and with an honest purpose." *Yancey v. Gillespie*, 242 N.C. at 229, 87 S.E. 2d at 212.

    In addition, the letter by its terms indicates that it was signed in the context of a labor dispute: "The word tendonitis never came up until the union started working to get into the plant." In *Bouligny, Inc. v. Steelworkers*, the Supreme Court stated:

Mere vituperation and name calling directed by a union against an employer, or vice versa, in the course of a labor dispute or organization campaign, are not sufficient basis for a recovery of damages for slander or libel. Even when the plaintiff is an individual, some thickness of skin is required of him by the law in the realm of labor disputes, just as in battles in the political arena.

270 N.C. 160, 173, 154 S.E. 2d 344, 356 (1967).

We acknowledge that the opinions of the individual defendants are expressed in a robust manner and with some anger or hostility toward the plaintiffs. However, the plaintiffs having publicly expressed their own strong feelings on a controversial issue of public interest, must have some "thickness of skin" when the response is less than favorable. We believe the words used do not go beyond the bounds of proper debate, and that the letter read as a whole and considered in its setting is not reasonably susceptible of the defamatory meaning alleged by the plaintiffs.

## IV

Concluding as we do that the letter complained of by the plaintiffs is not defamatory as a matter of law, we hold that summary judgment in favor of both the individual and corporate defendants was proper.

Affirmed.

Judge MARTIN concurs.

Judge PHILLIPS concurs in the result.