IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-16

Filed 3 December 2024

Mecklenburg County, No. 21CVS10876

LANEY FOX, NAKIA HOOKS, ASHLEY WOODROFFE, MICHAELA DIXON, SYDNEY WILSON, TAMERAH BROWN, KENNEDY WEIGT, KORBIN TIPTON, and FATOU SALL, Plaintiffs,

v.

LENOIR-RHYNE UNIVERSITY and FREDERICK WHITT, Defendants.

Appeal by plaintiffs from summary judgment entered 19 September 2023 by Judge Carla N. Archie in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 August 2024.

> *Kennedy, Kennedy, Kennedy & Kennedy, L.L.P., by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiffs-appellants.*

> *Robinson Bradshaw & Hinson, P.A., by Charles E. Johnson, David C. Kimball, and Spencer T. Wiles, for defendants-appellees.*

GORE, Judge.

Plaintiffs appeal summary judgment in favor of defendants. Plaintiffs argue there were genuine issues of material fact to overcome summary judgment on the claims for breach of contract and plaintiff Fox's libel claim. Upon review of the briefs and the record, we affirm.

**I.**

Plaintiffs Laney Fox, Nakia Hooks, Ashley Woodroffe, Michaela Dixon, Sydney Wilson, Tamerah Brown, Kennedy Weigt, and Korbin Tipton ("plaintiffs-athletes")

were recruited to play women's basketball at Lenoir-Rhyne University ("Lenoir-Rhyne").  Plaintiff Fatou Sall became the women's basketball team manager while attending Lenoir-Rhyne and remained the team manager until November 2020.  Plaintiffs Fox, Hooks, Woodroffe, Dixon, Brown, Weigt, and Tipton executed National Letters of Intent ("NLI") to commit to the women's basketball team, and all plaintiffs-athletes executed Grants-in-Aid ("GIA") to receive their athletic scholarships to Lenoir-Rhyne.

Each GIA stated the scholarship was for a one-year period, and acknowledged this one-year limitation was according to the NCAA and Lenoir-Rhyne policies.  These scholarships could not be reduced or cancelled during the one-year period apart from four exceptions that were specified in the GIAs.  At the end of the academic year, according to the NCAA student-athlete handbook, the financial aid office was to notify the student-athlete of their award for the coming year.  If the financial aid award was reduced or cancelled, the student-athlete would have the right to a hearing before the Athletics Appeal Committee upon a written request for appeal.  Lenoir-Rhyne was required to comply with these regulations and policies to remain a member of Division II of the NCAA.  Plaintiffs-athletes signed renewal GIAs each academic year when their scholarships were renewed.

Plaintiffs Fox, Hooks, Woodroffe, and Tipton attested they were orally promised a four-year scholarship, automatic renewal of a yearly contract, or to play basketball for four years during their recruitments by Coach Cam Sealy, the previous

women's basketball coach, or Coach Grahm Smith, the current women's basketball coach. Plaintiffs-athletes received their scholarships for the 2020-2021 academic year but were given the choice to opt out of the basketball season due to COVID-19 without any change in their scholarship status; only plaintiff-Fox opted out of the 2020-2021 basketball season starting in November 2020. Plaintiffs also assert the Lenoir-Rhyne student-handbook's provision regarding freedom of expression for students was incorporated into the GIA contract.

Plaintiff Sall orally agreed to be the women's basketball team manager after attending a job fair at Lenoir-Rhyne. She did not receive any financial scholarship for her work as the basketball team manager. There was no written contract to be the manager, and each semester the coaches would ask plaintiff Sall if she was available to be the manager that semester. There was no set term agreed upon; it was a season-by-season position.

During the height of COVID-19 in the 2020-2021 basketball season, there were racial tensions within the basketball team that caused the coaches and some administrative personnel to hold a meeting with the team. The team agreed to limit their team communication to only basketball-related and team goal-oriented discussions. Plaintiff Fox organized a "Symposium" for the basketball team and other university administrators to discuss racial prejudice, and later organized a second symposium, "The Talk," open to the entire university, to further discuss racial

prejudice. Plaintiff Fox alleges the coaches sought to "retaliate" against her and other African American teammates after these events.

Plaintiffs attested in their affidavits that they were forced off the basketball team at the end of the 2020-2021 basketball season. Plaintiff Fox had a meeting with the coaches in which the coaches told her she did not fit into the culture of the team and that she would not be welcomed back onto the team for the 2021-2022 basketball season. The coaches offered to still give plaintiff Fox her full scholarship for the 2021-2022 basketball season. Plaintiff Fox ultimately entered the transfer portal to leave Lenoir-Rhyne. Although plaintiffs Dixon, Weigt, Hooks, Wilson, and Brown attested they were forced off the basketball team for the 2021-2022 basketball season, the affidavits of Coach Smith and Kim Pate, the V.P. of Athletics, attested the players planned to and did enter the transfer portal for the 2021-2022 basketball season.

Plaintiff Sall attested in an affidavit that she was "involuntarily separated from the team." During plaintiff Sall's deposition, she admitted she sent Coach Smith a text that stated, "If it isn't already obvious, I will not be working with you guys this semester. Hope you guys have a great season."

Plaintiff Fox later published social media images with statements and an "Open Letter to Lenoir-Rhyne" in which she made claims that she and other teammates were forced off the basketball team due to racism and retaliation. In response, Lenoir-Rhyne's president, Frederick Whitt, published a letter to the entire Lenoir-Rhyne community in which he stated the following:

> Yesterday, a former student-athlete posted a number of false claims on social media, including that she was dismissed from the women's basketball team for speaking out against racism and advocating for social justice. Lenoir-Rhyne flatly disagrees with this student's version of events. Her dismissal from the basketball team was a legitimate coaching decision, and suggestions to the contrary are simply false.

Plaintiff Fox also published a recording to social media of her meeting with the basketball coaches in which they told her she would no longer be on the basketball team.

Plaintiffs filed a lawsuit on 8 July 2021, against Lenoir-Rhyne, Grahm Smith, and Frederick Whitt for the following claims: breach of contract, negligent misrepresentation, tortious interference with contractual rights, tortious interference with prospective economic advantage, and libel per se or alternatively libel subject to two interpretations. Defendants filed a Rule 12(b)(6) motion to dismiss, and the trial court granted the motion to dismiss in part by dismissing all claims against Smith, leaving the following remaining claims against Lenoir-Rhyne and Whitt: the breach of contract claim and the claim for libel subject to two interpretations. The parties conducted extensive discovery, and defendants filed a motion for summary judgment on the remaining claims against Lenoir-Rhyne and Whitt. After reviewing the parties' affidavits, depositions, interrogatories, financial documents, contractual documents, and all exhibits presented, the trial court ultimately granted summary

judgment to defendants. Plaintiffs filed a timely appeal to this Court upon entry of the summary judgment.

**II.**

Plaintiffs appeal of right pursuant to N.C.G.S. § 7A-27(b). Plaintiffs list three issues on appeal: (1) whether the trial court erred by granting summary judgment in defendants' favor for plaintiffs' breach of contract claim and plaintiff Fox's libel claim; (2) whether plaintiffs are entitled to mental and emotional distress damages under the breach of contract claim; and (3) whether plaintiff Fox presented sufficient evidence for punitive damages on her libel claim. Because we determine the first issue is dispositive, we do not address plaintiff Fox's remaining issues regarding damages.

We review a trial court's summary judgment de novo. *See In re Will of Jones*, 362 N.C. 569, 573 (2008).

> Summary judgment is appropriate when no genuine issue of material fact exists, and a party is entitled to judgment as a matter of law. Summary judgment is only appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law. A genuine issue is one that can be maintained by substantial evidence. In review of the motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.

*Value Health Sols., Inc. v. Pharm. Research Assocs., Inc.*, 385 N.C. 250, 267 (2023) (cleaned up). Because defendants moved for summary judgment, we consider the evidence in the light most favorable to plaintiffs.

## A.

Plaintiffs argue the trial court erred by granting summary judgment on their breach of contract claims. Specifically, plaintiffs appear to argue there was more than one contract: an oral contract and a written contract. Conversely, defendants argue any oral statements made prior to the written contract constitute parol evidence and argue that the written contracts, the NLI and the GIA, plainly stated that they "nullifi[ed] any agreements, oral or otherwise, which would release [them] from the conditions stated within th[e] NLI." Although it is difficult to discern in plaintiffs' brief what they claim was contractually breached, after reviewing the record and their complaint, we believe they are arguing the alleged oral and written contracts were breached when the players were allegedly cut from the team and their scholarships allegedly cancelled. Accordingly, we review de novo whether there was any genuine issue of material fact for breach of the written contracts, and whether there was any genuine issue of material fact as to the breach of any oral contracts—if there were oral contracts intact and separate from the written contracts.

As all parties acknowledge, a breach of contract claim requires the "(1) existence of a valid contract, and (2) breach of the terms of [the] contract." *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 372 N.C. 260, 276 (2019) (citations omitted).

"Contract interpretation is a question of law. When interpreting a contract, the Court should presume that the words of the agreement were deliberately selected and be given their plain meaning." *Value Health Sols., Inc.*, 385 N.C. at 267 (cleaned up). Further, evidence of "oral stipulations . . . must not conflict with the written part of the contract. . . . [S]uch evidence will not be received where it contradicts or varies a written contract." *Dr. Shoop Family Med. Co. v. J.A. Mizell & Co.*, 148 N.C. 384, 386 (1908).

Looking to the GIA contracts signed by plaintiffs-athletes, and to the NLI signed by plaintiffs Fox, Hooks, Woodroffe, Dixon, Brown, Weigt, and Tipton, the contractual language is nearly identical in each NLI and GIA (apart from the distinctions of their names, start years, and amount of scholarship granted). All parties agree these written contracts were valid, existing contracts, and only dispute the contractual terms and whether the parties breached these terms. The GIA contracts plainly state the scholarship award is "for one academic year." The record also includes GIA "renewal" contracts, electronically signed by the plaintiffs-athletes, that specify one academic year for the scholarship and include conditions for the renewal of the scholarship. Based upon the evidence in the record, and recognizing any oral promises made in contradiction to the written contracts are not received, there is no genuine issue of material fact that the scholarship was limited to one year and subject to renewal with new contracts each academic year.

Plaintiffs also argue defendants could only cancel the GIA if the listed four conditions in the GIA apply. The original GIA contracts signed by the plaintiffs state the following:

> Upon the recommendation of the Head Coach and approval from the Director of Athletics, an Athletics Grant-in-Aid may be reduced or canceled *during the period of the award* by the institutional financial aid authority per NCAA Bylaw 15.6.4.1 if any of the following situations occur: (a) you render yourself ineligible for intercollegiate competition; (b) you fraudulently misrepresent, as defined in the Student-Athlete Handbook, any information on an application, Letter of Intent or financial aid agreement; (c) you engage in serious misconduct warranting substantial disciplinary penalty through the institution's regular student disciplinary authority; or (d) you voluntarily withdraw from the sport at any time for personal reasons.

The plain language within the contract dispels plaintiffs' argument. It plainly states "during the period of the award." Apart from those terms within the GIA, plaintiffs point to no contractual provision that limits defendants' ability to renew or cancel the scholarship after completion of the academic year. Defendants admit they removed plaintiff Fox from the basketball team after the 2020-2021 academic year. But defendants also state, in affidavits and through evidence of a renewal contract, that they awarded a scholarship to plaintiff Fox for the 2021-2022 academic year despite removing her from the basketball team.

Plaintiff Fox admitted during her deposition that she entered the transfer portal to leave Lenoir-Rhyne. The NCAA Division II manual, section 15.5.5.1, and the Student-Athlete handbook, by which parties admit they were contractually

bound, state defendants must let the student-athlete know "whether the grant has been renewed or not renewed for the ensuing academic year." Apart from the limitations during the academic period year, plaintiffs point to no requirement for the institutions to automatically renew grants once the academic year completes. The evidence in the record demonstrates the only obligation listed is to notify the student-athlete of the institution's decision, but there is no obligation to renew the grant. Accordingly, based upon the record before us, plaintiffs fail to demonstrate a genuine issue of material fact as to any breach of contract of the GIA terms by defendants.

The remaining plaintiffs-athletes argue in their conclusory affidavits that they were forced off the basketball team. Whereas, defendants argue these plaintiffs-athletes were not removed from the team, but instead chose to enter the "transfer portal" to transfer to different institutions. The evidence in the record, including their own statements within their depositions, demonstrates the plaintiffs-athletes entered the transfer portal at the completion of the 2020-2021 academic year. Each cancellation of a renewal GIA stated that the student "indicated intent to transfer during the next academic year."

This evidence suggests plaintiffs-athletes' contracts were completed for the 2020-2021 academic year and that each one chose to transfer from Lenoir-Rhyne. These decisions were made during the time frame that Lenoir-Rhyne could determine whether to renew or cancel the GIA. Further the Student-Athlete handbook provided an appeals process for student-athletes who did not receive a renewal of their GIAs.

There is no indication in the record that plaintiffs appealed their GIAs. This is likely because the evidence in the record demonstrates plaintiffs entered the transfer portal to transfer to a different institution prior to any non-renewal of their GIAs. Accordingly, plaintiffs-athletes fail to demonstrate a genuine issue of material fact for the breach of contract claim against defendants.

Finally, plaintiff Sall, the former team manager of the women's basketball team, argues she had a contract with defendants and that they breached the contract. Plaintiff Sall testified in her deposition that she had an oral agreement with the basketball coaches to work as the team manager at the beginning of each season, that there was no written contract, and that she did not commit to any length of time to be the team manager. Plaintiff Sall executed an affidavit stating she "tried to contact Grahm Smith to let him know that [she] was ready to return as team manager. [She] sent him several text messages, but he failed to respond. [She] was therefore involuntarily separated from the team."

However, within the record, plaintiff Sall admits texting Coach Smith that she would "not be working with [the team] this semester." Accordingly, there is no genuine issue of material fact of a breach of contract claim against defendants and plaintiff Sall, because plaintiff Sall admittedly quit working as the team manager. Because plaintiff Sall fails to demonstrate defendants breached any alleged contract, we do not consider the validity of the alleged oral contract. Accordingly, having determined there is no breach of contract as to any of the contract claims made by

plaintiffs, we do not consider any alleged emotional or mental distress damages as argued by plaintiffs.

**B.**

Plaintiff Fox also argues the trial court erred by granting summary judgment on her remaining alternative libel claim. Specifically, plaintiff Fox first argues the trial court erred by "overruling" a previous Rule 12(b)(6) order. Plaintiff Fox also argues that she only needs to provide evidence that defendant Whitt's statement "had a defamatory meaning" and that the defamatory meaning was understood by the third-party recipients. Plaintiff appears to argue that by overcoming a Rule 12(b)(6) motion to dismiss on an alternative theory of libel "susceptible of two reasonable interpretations, one of which is defamatory and the other is not," any granting of summary judgment by the trial court has the effect of "overruling" the prior Rule 12(b)(6) order. *Tyson v. L'Eggs Prods., Inc.*, 84 N.C. App. 1, 11 (1987). Additionally, it appears that plaintiff Fox believes that having successfully overcome a Rule 12(b)(6) dismissal for libel subject to two interpretations that now only a jury can determine whether the statements were defaming or not. We disagree with plaintiff Fox's legal assertions.

Plaintiff Fox relies upon *Robinson v. Duke Univ. Health Systems* in support of her argument that one trial court judge could not overrule the decision of another trial court judge. 229 N.C. App. 215 (2013). In *Robinson*, one judge denied the defendant's motion to dismiss based upon the provisions of Rule 9(j) and the latter

judge overruled this determination in a later order granting summary judgment for the defendant. *Id.* at 222. However, having reviewed *Robinson* in context, the legal question was whether the complaint properly complied with the requirements of Rule 9(j). *Id.* That legal question is decided at the Rule 12(b)(6) stage and it cannot be overcome at summary judgment without having the effect of one trial court judge overruling another trial court judge's determination. *Id.*

This legal context is not to be applied to every Rule 12(b)(6) order because the general application is that there are different legal standards by which we consider a Rule 12(b)(6) motion and a Rule 56 motion. A motion to dismiss is decided upon the four corners of the complaint and has a lower threshold that passes muster when the pleading party provides sufficient facts to meet the elements for the legal claim. Under the Rule 12(b)(6) standard, the facts are treated as true and there is no other evidence considered outside the four corners of the complaint. *See State ex rel. Stein v. Kinston Charter Acad.*, 379 N.C. 560, 572 (2021). But in the context of a Rule 56 motion, the parties have exchanged discovery and submitted affidavits, interrogatories, and additional documents to the court. *See Estate of Graham v. Lambert*, 385 N.C. 644, 656–57 (2024) (cleaned up) ("And while a 12(b)(6) motion is decided on the pleadings alone, summary judgment embraces more than the pleadings, allowing courts to consider affidavits, depositions, and other information."). At this juncture, the trial court now considers all the evidence

- 13 -

presented and considers whether there is any genuine issue of material fact such that judgment is or is not proper as a matter of law. *See id.*; N.C. R. Civ. P. 56(c).

In the present case, having considered only the four corners of the complaint, the trial judge determined plaintiff Fox pled her alternative argument for libel sufficiently by treating the alleged facts within the complaint as true to overcome the Rule 12(b)(6) motion. After discovery and upon the motion for summary judgment, the trial court had additional evidence not available at the Rule 12(b)(6) stage such as: the open letter published by plaintiff to social media, the additional social media posts, the published letter by defendant Whitt, multiple affidavits, plaintiffs' depositions, the NLIs, the GIAs, and financial documents. Within this context, the trial court determined there was no genuine issue of material fact as to plaintiff Fox's libel claim subject to two interpretations. Accordingly, the trial court did not overrule the previous denial of the Rule 12(b)(6) order. We now consider under de novo review whether the trial court erred in determining there was no genuine issue of material fact and that defendants were entitled to judgment as a matter of law.

Plaintiff Fox published a letter on social media, entitled "An Open Letter to Lenoir-Rhyne University" along with multiple social media pictures entitled, "The Racist 'Culture' of Lenoir-Rhyne University," "Quotes From Racist Teammates," "The Coaching Staff," "The NCAA & LR," and "Ignorance." Within the letter and social media posts, plaintiff Fox made claims of racism against coaches, basketball teammates, Lenoir-Rhyne, and claimed multiple players were forced to leave the

basketball team because of racism. In response to these published images and letter, defendant Whitt published a letter to the Lenoir-Rhyne community. Plaintiff Fox claims the following portion of his letter was defamatory:

> Yesterday, a former student-athlete posted a number of false claims on social media, including that she was dismissed from the women's basketball team for speaking out against racism and advocating for social justice. Lenoir-Rhyne flatly disagrees with this student's version of events. Her dismissal from the basketball team was a legitimate coaching decision, and suggestions to the contrary are simply false.

Plaintiff Fox provided no further argument or legal analysis to demonstrate the evidence at summary judgment was sufficient for each element of defamation and that there is a genuine issue of material fact as to her libel claim. Instead, plaintiff Fox merely cites to multiple cases that state this type of libel claim, "is for the jury to determine under the circumstances whether the publication is defamatory and was so understood by those who saw it." *Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 316 (1984) (citation omitted). Plaintiff Fox also states, "to survive summary judgment, plaintiff only had to bring forth evidence that Whitt's statement had a defamatory meaning and that was so understood by those to whom the publication was made." This is an incorrect statement of the law.

Considering the evidence presented at summary judgment in the light most favorable to plaintiff Fox, plaintiff has not demonstrated, nor argued for that matter, that there is any genuine issue of material fact to overcome summary judgment.

Plaintiff Fox improperly relies upon the Rule 12(b)(6) order as a mechanism to overcome summary judgment and provide automatic access to a jury trial. As previously stated, the parties must demonstrate there is a genuine issue of material fact given the additional evidence presented at summary judgment. Having failed to properly address the summary judgment standard and provide this Court with an argument demonstrating there is a genuine issue of material fact, plaintiff Fox's challenge is overruled. Therefore, we determine the trial court did not err by granting summary judgment to defendants on the remaining claims.

### III.

For the foregoing reasons, we affirm the trial court's summary judgment in favor of defendants.


AFFIRMED.

Chief Judge DILLON and Judge STROUD concur.