CORINNE CHAPMAN, KELLY CHAPMAN, BY AND THROUGH HER PARENT AND GUARDIAN, DONNIE CHAPMAN, HISAE MILES, CAROL GOINS, ROSITA ENGLAND, DONNA McNALLY, STACY OLIPHANT, DOUGLAS FERGUSON, AND TERRY LUDLUM, PLAINTIFFS, v. MITCHELL BYRD, INDIVIDUALLY AND IN HIS CAPACITY AS DIRECTOR OF HOKE COUNTY EMERGENCY MEDICAL SERVICES; DJUANA REAVES, INDIVIDUALLY AND AS ASSISTANT DIRECTOR OF HOKE COUNTY EMERGENCY MEDICAL SERVICES; AND HOKE COUNTY, NORTH CAROLINA, DEFENDANTS

No. COA95-996

(Filed 1 October 1996)

**1. Libel and Slander § 12 (NCI4th)— statement that "someone" in building has AIDS—group members not defamed**

Defendants' alleged statements that "someone" in a certain commercial building has AIDS were not statements "of or concerning" the nine employees of businesses in the building and could not provide the basis for a defamation action by those employees.

**Am Jur 2d, Libel and Slander § 444.**

**Class or group defamation as actionable by individual member. 52 ALR4th 618.**

**Imputation of criminal, abnormal, or otherwise offensive sexual attitude or behavior as defamation—post-*New York Times* cases. 57 ALR4th 404.**

**2. Constitutional Law § 98 (NCI4th)— statement that "someone" in building has AIDS—insufficient to support civil rights action**

Alleged statements by county employees that "someone" who works in a commercial building has AIDS were insufficient to support 42 U.S.C. § 1983 claims by employees of businesses in the building for a violation of their federal due process rights because allegations of damage to business expectations deriving solely from harm to reputation do not establish harm to a protected property or liberty interest.

**Am Jur 2d, Libel and Slander § 351.**

**Proof of injury to reputation as prerequisite to recovery of damages in defamation action. 36 ALR4th 807.**

### 3. Intentional Infliction of Mental Distress § 2 (NCI4th)— statements by EMS officials—sufficiency of complaint

Allegations by nine employees of businesses in a commercial building that defendant county EMS officials repeated false rumors that "someone" in the commercial building has AIDS without investigating the truthfulness of the rumors, and that plaintiffs suffered severe emotional distress, mental anguish, humiliation and ridicule as a proximate result of defendants' statements, were sufficient to state a claim for the intentional infliction of emotional distress against the officials and the county.

**Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 37, 38.**

**Modern status of intentional infliction of mental distress as independent tort. 38 ALR4th 998.**

### 4. Negligence § 6 (NCI4th)— negligent infliction of emotional distress—sufficiency of complaint

Allegations by employees of businesses in a commercial building that defendant county EMS officials falsely stated that someone working in the commercial building has AIDS, that defendants breached a duty to take reasonable steps to ascertain the truth of the statements, that injury to plaintiffs was foreseeable, and that plaintiffs suffered severe emotional distress, mental anguish, and ridicule as a proximate result of the statements were sufficient to state a claim for negligent infliction of emotional distress. Plaintiffs were not precluded from bringing such a claim because their emotional distress arose from alleged harm to themselves rather than from plaintiffs' concern for others.

**Am Jur 2d, Fright, Shock, and Mental Disturbance § 3.**

Appeal by plaintiffs from order entered 13 July 1995 by Judge B. Craig Ellis in Hoke County Superior Court. Heard in the Court of Appeals 24 April 1996.

*Beaver, Holt, Richardson, Sternlicht, Burge & Glazier, P.A., by Richard B. Glazier and Rebecca J. Britton; and Mark T. Jernigan; for plaintiffs-appellants.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Tyrus V. Dahl, Jr. and Ursula M. Henninger, for defendants-appellees.*

CHAPMAN v. BYRD

[124 N.C. App. 13 (1996)]

LEWIS, Judge.

Plaintiffs appeal the N.C.R. Civ. P. 12(b)(6) dismissal of their claims for defamation, intentional and negligent infliction of emotional distress, and their 42 U.S.C. § 1983 ("Section 1983") claims for violation of their federal due process rights.

On 1 December 1994, these nine plaintiffs filed complaints against defendants. Upon defendants' motion and by order entered 13 July 1995, Judge B. Craig Ellis dismissed all of the claims. Plaintiffs appeal.

In reviewing a N.C.R. Civ. P. 12(b)(6) dismissal, we must take plaintiffs' allegations as true. *Forbis v. Honeycutt*, 301 N.C. 699, 701, 273 S.E.2d 240, 241 (1981). Plaintiffs allege the following: Plaintiff Douglas Ferguson owns and operates two businesses, The Colonial Florist and the Sub Station Deli, located in a commercial building which he owns called the Colonial House. He also leases space in the building to five other businesses, Corrine's Hair Salon, Corrine's Tanning and Toning, Hava Java Coffee Shop, Nail Dynamics, and the Frame Gallery. The plaintiffs are either employees or owners and operators of these various businesses.

Plaintiffs further allege: On 29 April 1994, several employees of defendant Hoke County, including Deb Walden, Richard Sousa, and Ronald Blackburn, made plans to go to the Sub Station Deli for lunch. Prior to their departure, defendant Mitchell Byrd, the director of the Hoke County Emergency Medical Services ("EMS"), told them "You don't need to be there." When asked why, he replied, "I heard someone over there has AIDs." Reports of this statement subsequently appeared in the Fayetteville *Observer-Times*, in the Raeford *News Journal*, and on a WTVD 11 News Report. As reported in an article published on 1 June 1994, defendant Djuana Reaves, assistant director of the Hoke County EMS, told the Raeford *News Journal* that "Mr. Byrd told Mr. Blackburn, 'there's a rumor going around that someone at the Colonial House has HIV,' as a professional courtesy in case they had to go pick them up or something." A total of nine persons, the plaintiffs here, owned, operated, or were employed at the Colonial House when these statements were made. Plaintiffs allege that, at the time of these events, none of them had been diagnosed with the AIDS virus, *i.e.*, HIV positive.

### Defamation Claims

[1] Plaintiffs first assign error to the dismissal of their defamation claims. In these claims, plaintiffs specifically allege that defendants

Byrd's and Reaves' published statements were defamatory per se, false, made with malice, and the proximate cause of significant harm to them and that the County is also liable for their defamatory statements on a theory of respondeat superior.

One of the essential elements of a defamation claim is the allegation that a defendant's statements are "of or concerning" the plaintiff. *Tyson v. L'eggs Products, Inc.*, 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987). In *Arnold v. Sharpe*, 296 N.C. 533, 251 S.E.2d 452 (1979), our Supreme Court defined this element by stating: "In order for defamatory words to be actionable, they must refer to some ascertained or ascertainable person and that person must be the plaintiff. If the words used contain no reflection on any particular individual, no averment can make them dafamatory [sic]." *Id.* at 539, 251 S.E.2d at 456.

Citing *Carter v. King*, 174 N.C. 549, 94 S.E. 4 (1917), plaintiffs assert that this element is satisfied here because their complaints show that they were defamed as a group. In *Carter*, the plaintiff was a juror who served in a previous trial that resulted in a vote of eleven to one. *Id.* at 551, 94 S.E. at 5. The plaintiff, one of the eleven jurors who voted against an institute for which the defendant was a trustee, alleged that he was defamed when the defendant stated that "there was one man on the jury that was not bribed" and "I note what you say about the jury standing eleven to one; this was due entirely to whiskey and the appeal made to their prejudice." *Id.* at 551-52, 94 S.E. at 5. The Supreme Court concluded that the plaintiff could maintain his cause of action even though the defendant's defamatory statements did not make direct reference to him because all eleven jurors (including the plaintiff) were implicated in the statements. *Id.* at 552-53, 94 S.E. at 6.

In *Carter*, eleven of the jurors were accused of misconduct; so all of them had potential causes of action. In contrast, here the statements concern only one person in a group of nine, *i.e.*, the statements referred to "some*one*." Plaintiffs have not cited nor have we found any North Carolina case holding that any one person of a group of nine may bring a defamation action based on statements made about a single unidentified member of the group.

Plaintiffs also rely on cases from other states and on the Restatement (Second) of Torts section 564A (1976). These cases recognize group defamation claims: (1) where some or most members of a group are defamed, *e.g.*, *Farrell v. Triangle Publications, Inc.*, 159

A.2d 734 (Pa. 1960), *Neiman-Marcus v. Lait*, 13 F.R.D. 311 (S.D.N.Y. 1952); (2) where all members of a group are defamed, *e.g.*, *Brady v. Ottaway Newspapers, Inc.*, 445 N.Y.S.2d 786 (N.Y. App. Div. 1981), *Montgomery Ward & Co. v. Skinner*, 25 So. 2d 572 (Miss. 1946); and (3) where one of a group of two are defamed, *e.g.*, *American Broadcasting-Paramount Theaters, Inc. v. Simpson*, 126 S.E.2d 873 (Ga. Ct. App. 1962) ("Simpson").

We find none of these cases on point. Since the alleged statements referred only to "someone" in a group of nine, they clearly do not refer to some, most or all of the group. Plaintiffs' allegations also do not involve defamation of one of two as in the *Simpson* case.

Plaintiffs further rely on *Ball v. White*, 143 N.W.2d 188 (Mich. Ct. App. 1966) and *Columbia Sussex Corp. Inc. v. Hay*, 627 S.W.2d 270 (Ky. Ct. App. 1981). In *Ball*, "someone" of a group of six workers was accused in a letter of stealing a watch. *Id.* at 189. The letter also stated that "there is no question about the disappearance [of the watch] occurring through some of your workmen." *Id.* In allowing the claim, the Michigan Court stated that the libel was directed "at one or more" of the workers. *Id.* at 190. In addition, since all the workers were working together at one location when the purported theft occurred, *see id.* at 190, they were all implicated by the accusations. Given these factual distinctions, we find *Ball* to be most akin to the "some or most" group defamation cases and inapplicable to the case at bar. For similar reasons, we also find *Columbia Sussex Corp. Inc.* distinguishable.

In a case strikingly like this one, the First Circuit Court of Appeals held, as a matter of law, that a defamatory statement referring to one unidentified member of a group of twenty-one police officers did not give rise to a cause of action in favor of members of the group. *Arcand v. Evening Call Publishing Co.*, 567 F.2d 1163, 1165 (1st Cir. 1977).

We note that section 564A of the Restatement (Second) of Torts does not provide persuasive authority for plaintiffs' position. In Section 564A, comment C, a hypothetical with facts similar to those stated in plaintiffs' claims is cited as an example that warrants dismissal. *See* Restatement (Second) of Torts section 564A, cmt. c. (1976) (stating that "the assertion that one man out of a group of 25 has stolen an automobile may not sufficiently defame any member of the group").

We find no controlling or persuasive precedent to support plaintiffs' contentions. We conclude that plaintiffs have failed to state claims for defamation because their allegations, as a matter of law, fail to allege facts sufficient to show that the alleged defamatory statements were made "of or concerning" them.

### Section 1983 Claims

[2] In their second assignment of error, plaintiffs assert that the trial court erred by dismissing their Section 1983 due process claims. In these claims, plaintiffs allege that defendants Byrds' and Reaves' defamatory statements, made individually and as agents for the County, deprived them of constitutionally protected property and liberty interests in their businesses and reputation without due process of law.

Statements by public officials that result only in injuries to personal reputation do not support a Section 1983 claim for violation of due process. *Paul v. Davis*, 424 U.S. 693, 712, 47 L. Ed. 2d 405, 420 (1976). In *Paul*, the U.S. Supreme Court stated that previous case-law did not establish that " . . . reputation alone, *apart from some more tangible interests such as employment*, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Paul*, 424 U.S. at 701, 47 L. Ed. 2d at 414 (emphasis added).

Plaintiffs acknowledge this limitation. However, they assert that statements, by government officials, that inflict harm to a plaintiff's reputation are sufficient to support a Section 1983 due process claim when the statements result in tangible injury to business goodwill. Under the facts alleged, we disagree.

We conclude that plaintiffs have not alleged harm to a protected property or liberty interest. Allegations of damage to business expectations deriving solely from harm to reputation do not suffice. A plaintiff "must have more than a 'unilateral expectation' of a property interest; he must have a 'legitimate claim of entitlement to it.' " *Gentile v. Town of Kure Beach*, 91 N.C. App. 236, 241, 371 S.E.2d 302, 306 (1988) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561 (1972)).

In a similar Section 1983 due process claim based on defamation, the D.C. Circuit Court stated:

. . . that financial harm is caused by government imposed stigma does not transform an interest in reputation into a liberty interest . . . . the Court [in *Paul v. Davis*] held that defamation alone is not enough to give rise to a due process right; "other governmental action" is required. Proof of damages caused by a defamation does not meet that requirement. The Court was well aware of the "frequently drastic effect of the 'stigma' which may result from defamation by the government," . . .; it was also aware that actual monetary damages are often proved . . . in defamation actions . . . .'

*Mosrie v. Barry*, 718 F.2d 1151, 1158 (D.C. Cir. 1983) (internal citations omitted).

This approach has recently been reinforced by the U.S. Supreme Court in *Siegert v. Gilley*, 500 U.S. 226, 114 L. Ed. 2d 277 (1991). In *Siegert*, the Court held that a former employee of a federal hospital had failed to state a 1983 due process claim where he alleged that his reputation and future employment prospects were damaged as a result of statements made by his former supervisor. *Id.* at 234, 114 L. Ed. 2d at 288. The Court stated:

The facts alleged by Siegert cannot, in the light of our decision in Paul v. Davis, be held to state a claim for denial of a constitutional right. . . . Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. *But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law . . . .*

*Id.*

In accord with *Paul* and *Siegert*, we hold that plaintiffs have not stated Section 1983 claims based on their federal due process rights. Given our disposition of this issue, we do not address defendants' assertion that they are entitled to qualified immunity on these claims.

Intentional Infliction of Emotional Distress Claims

[3] To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege facts showing that the defendant engaged in "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). The second element may also be stated by allegations that the

defendant acted with "reckless indifference to the likelihood" that his or her acts "will cause severe emotional distress." *Id.*

In their IIED claims, plaintiffs allege that defendants Byrd and Reaves, individually and as agents for the County, displayed extreme and outrageous behavior by repeating rumors that someone at the Colonial House had AIDS and/or was HIV positive and by failing to investigate the truth and falsity of the alleged rumors prior to repeating them and that they did so with reckless indifference to the likelihood of causing plaintiffs severe emotional distress, and that plaintiffs suffered severe emotional distress, mental anguish, humiliation and ridicule as a proximate result of the statements.

The determination of what constitutes extreme and outrageous conduct is a question of law. *Shillington v. K-Mart Corp.*, 102 N.C. App. 187, 198, 402 S.E.2d 155, 161 (1991). Here, the statements were allegedly made by the Director and Assistant Director of the Hoke County EMS, persons whose statements would be highly credible in the eyes of the citizens of the area, particularly in matters of public health. Given this credibility, the likelihood of harm caused by false assertions by EMS officials that "someone" has the AIDs virus was extremely high. Given these circumstances, we hold that the statements made by defendants Byrd and Reaves can, as a matter of law, constitute extreme and outrageous conduct.

On review of plaintiffs' allegations, we conclude that the complaints do not reveal an insurmountable bar to recovery. Although their allegations regarding severe emotional distress are somewhat conclusory, our courts have not required detailed fact pleading on this element. *E.g., Dixon v. Stewart*, 85 N.C. App. 338, 340-41, 354 S.E.2d 757, 758-59 (1987). The trial court erred by dismissing this claim.

Negligent Infliction of Emotional Distress Claims

[4] In *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 395 S.E.2d 85 (1990), we stated that a plaintiff, in order to state a claim for negligent infliction of emotional distress ("NIED"), must allege that: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Id.* at 304, 395 S.E.2d at 97.

Citing *Gardner v. Gardner*, 334 N.C. 662, 665, 435 S.E.2d 324, 327 (1993), defendants assert that plaintiffs' claims for NIED were properly dismissed because plaintiffs allege harm to themselves and that this cause of action only lies for emotional distress that arises from a plaintiff's concern for others, not for his own welfare. In *Gardner*, our Supreme Court stated the following:

> In *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 395 S.E.2d 85, we concluded that an action for negligent infliction of emotional distress had its roots in one hundred years of North Carolina jurisprudence, beginning with *Young v. Telegraph Co.*, 107 N.C. 370, 11 S.E. 1044 (1890). We noted that *Young* and, subsequently, *Bailey v. Long*, 172 N.C. 661, 90 S.E. 809 (1916), *permitted a cause of action for emotional distress arising not from a plaintiff's concern for his own welfare, but from his concern for that of another.*

*Id.* at 665, 435 S.E.2d at 327. Defendants cite the above italicized language in *Gardner* as the sole authority for their position.

We disagree with defendants' reading of *Gardner*. After reviewing *Gardner* and the cases cited in the portion of the opinion quoted above, we conclude that the Court in *Gardner* did not, by this language, preclude a plaintiff from bringing a NIED claim when the emotional distress arises from concern for his or her own welfare. Rather, we read *Gardner* as simply clarifying that concern for one's own welfare is not essential to a claim for NIED when the emotional distress arises from concern for the welfare of another.

Defendants also contend that plaintiffs have failed to allege facts showing that it was reasonably foreseeable that their conduct would cause plaintiffs severe emotional distress. They further assert that this issue should be resolved by reference to the factors set forth in *Gardner*. *See Gardner*, 334 N.C. at 666, 435 S.E.2d at 327. We disagree with both of these assertions.

The factors set out in *Gardner* logically apply only when a plaintiff brings a negligent infliction of emotional distress claim based on concern for the welfare of another. In addition, the Court stated in *Gardner* that these factors were "neither requisites nor exclusive determinants in an assessment of foreseeability" and stressed that " '[q]uestions of foreseeability and proximate cause must be determined under *all* the facts presented' in each case." *Id.* (quoting *Johnson*, 327 N.C. at 305, 395 S.E.2d at 98). Here, we con-

clude that a jury could legitimately find it reasonably foreseeable that plaintiffs would suffer severe emotional distress as a result of public statements by defendants, given their positions as public health officials, that "someone" at the Colonial House has AIDs or is HIV positive.

In their NIED claims, plaintiffs allege that defendants Byrd and Reaves, individually and as agents of the County, negligently breached a duty to take reasonable steps to ascertain the truth of the statements made, that injury to plaintiffs was foreseeable, and that plaintiffs suffered severe emotional distress, mental anguish, and ridicule as a proximate result of the statements. We hold that these allegations are sufficient to satisfy the pleading requirements set forth in *Johnson* and that the trial court therefore erred by dismissing plaintiffs' NIED claims.

We affirm the trial court's dismissal of plaintiffs' defamation and Section 1983 claims and reverse its dismissal of their IIED and NIED claims.

Affirmed in part, reversed in part, and remanded.

Judges EAGLES and McGEE concur.