**Wilma Taylor FRENCH, Plaintiff,**

v.

**UNITED STATES of America, by and through its DEPARTMENT OF HUMAN HEALTH AND HUMAN SERVICE; Indian Health Services; Cherokee Indian Hospital; and Joyce Dugan, Defendants.**

**No. 2:98CV15.**

United States District Court,
W.D. North Carolina,
Bryson City Division.

Feb. 25, 1999.

Russell L. McLean, III, Waynesville, NC, for Plaintiff Wilma Taylor French.

Mark Calloway, U.S. Attorney, Deborah A. Ausburn, Assistant U.S. Attorney, Asheville, NC, for Defendants United States; Indian Health Servs.; and Cherokee Indian Hospital.

Reid G. Brown, Waynesville, NC, for Defendant Joyce Dugan.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

THIS MATTER is before the Court on the Plaintiff's timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, the undersigned referred the motion to dismiss of the United States to the Magistrate Judge for a recommendation as to disposition.[1] Having conducted a *de novo* review to those portions of the recommendation to which specific objections were filed, the Court accepts in part and rejects in part the recommendation. 28 U.S.C. § 636(b); Fed.R.Civ.P. 72.

### I. STANDARD OF REVIEW

The United States has moved pursuant to Rule 12(b)(6) to dismiss the causes of action alleged against it for failure to state claims upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). In ruling on a motion to dismiss for failure to state a claim, the Court must "accept the factual allegations in the Plaintiff's complaint and must construe those facts in the light most favorable to the plaintiff[ ].... [Dismissal may occur] only if it appears beyond doubt that the Plaintiff[ ] can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997); Shepard's, *Motions in Federal Court*, § 5.124, at 367 (2d ed.1991). Conclusory allegations are examined in light of the factual claims. *Id.* "To survive a motion under Fed.R.Civ.P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if

---

1. Defendant Dugan also moved to dismiss and the Magistrate Judge denied that motion. No objections have been raised to that recommendation and thus, the motion is not addressed herein.

proven, will justify some form of relief." *Id.*, § 5.123, at 366. If "relief could be granted under any set of facts that could be proved consistent with the allegations," the motion must be denied. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Although the parties have presented information in their motion and response which are outside the scope of the complaint, first amended complaint, second amended complaint and answers thereto, the Court has excluded that evidence and therefore did not convert this motion to one for summary judgment. Fed.R.Civ.P. 12(b).

## II. FACTUAL BACKGROUND

Plaintiff, who is the sister of the former Chief of the Eastern Band of Cherokee Indians, was employed in a secretarial position with the Chemical Dependency Unit (CDU) at the Cherokee Indian Hospital. After her brother was defeated by Joyce Dugan as the Chief, Plaintiff alleges that Dugan instructed the director of the CDU to terminate all employees who were related to the former Chief. As a result, she was terminated during a reduction in force in the Fall of 1995. When she attempted to obtain reinstatement or a new position, Joseph Johnson, Tribal Human Resources manager, was asked to investigate the circumstances surrounding her initial termination. According to agency policy, an employee terminated through a reduction in force may be reinstated within one year if requested by the department. In order to insure the Plaintiff would not be reinstated, Al Lossiah, the CDU director, wrote Johnson a letter in which he disclosed confidential medical information about the Plaintiff without her permission. Thereafter, Plaintiff was unable to obtain any employment within the tribal or federal systems.

## III. DISCUSSION

Plaintiff's first objection is to the recommendation that her cause of action based on the Federal Tort Claims Act (FTCA) be dismissed. The Magistrate Judge noted that the only torts actionable under the FTCA are those recognized by state law. Finding that Plaintiff failed to state such a tort, he recommended dismissal. Plaintiff objects, claiming that in North Carolina, violation of a statute prohibiting the disclosure of medical records is negligence *per se* and negligence constitutes a tort.

■ Plaintiff's claim under the FTCA is not based on her initial discharge but on the unauthorized and intentional disclosure of her medical records which prevented her reinstatement or consideration for another position. **Complaint, filed January 26, 1998, at 3.** As such, her claim could be based on either interference with contractual rights or intentional infliction of emotional distress. The FTCA waives the United States' sovereign immunity to suit in certain circumstances, but 28 U.S.C. § 2680(h), which covers exceptions to the FTCA, states that the act shall not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference in contract rights ...." *Talbert v. United States*, 932 F.2d 1064 (4th Cir. 1991); *White v. United States*, 64 F.3d 661 (table), 1995 WL 473979, at *2 (4th Cir. 1995) (quoting *United States v. Neustadt*, 366 U.S. 696, 710–11, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961) (footnote omitted)). Thus, to the extent her claim is based on interference with contractual rights, the United States has not waived its immunity and the cause of action is barred.

The issue then is whether a cause of action for intentional infliction of emotional distress is allowed under the FTCA. In an unpublished opinion, the Fourth Circuit has stated that if the facts would state a claim under state law for intentional infliction of emotional distress, then a claim may be stated under the FTCA provided the claim does not arise out of one of the exceptions noted above. *Harms v. United States*, 972 F.2d 339 (table), 1992 WL 203942 (4th Cir.1992). Other circuits also

follow this reasoning. *See, e.g., Sabow v. United States,* 93 F.3d 1445, 1457 (9th Cir.1996); *Santiago–Ramirez v. Secretary of Dept. of Defense,* 62 F.3d 445 (1st Cir. 1995); *Truman v. United States,* 26 F.3d 592, 594–95 (5th Cir.1994); *Duffy v. United States,* 966 F.2d 307, 313 (7th Cir.1992); *Metz v. United States,* 788 F.2d 1528 (11th Cir.1986); *Gross v. United States,* 723 F.2d 609 (8th Cir.1983).

> Plaintiff's complaint alleges Lossiah wrote a letter disclosing medical confidential information to Joseph Johnson, over Health and Human Services stationary, disclosing Plaintiff's medical record information. As a result of this disclosure the executive committee for the Eastern Band overturned a temporary job placement where the Plaintiff had been working at the Library because of the contents disclosed by this breach of confidential communication or information. That since the time of the breach of disclosure of confidential information ..., the Plaintiff has been unable to find employment, has applied for numerous positions with the Eastern Band and as a result of the disclosures of the information contained under the breach of her medical records has remained unemployed ... [and] has suffered great embarrassment and humiliation since this matter has become well known throughout the community....

Complaint, at ¶'s 13–14. Plaintiff's claim does not arise out of defamation; the information disseminated was apparently true. The gravamen of her claim is that this deceitful breach of confidentiality interfered with her contractual right to seek reinstatement. *Talbert,* 932 F.2d at 1066 (footnote omitted) (citations omitted). This claim may not be brought under the FTCA.

Plaintiff's third cause of action is for common law intrusion into private affairs. Plaintiff alleges the disclosure of her medical information in Lossiah's letter caused embarrassment, humiliation, loss of status and position in her community and emotional distress. The Magistrate Judge concluded that North Carolina does not recognize the tort of invasion of privacy and Plaintiff's complaint does not state a claim for intentional intrusion into the seclusion or private affairs of another. Plaintiff objects, claiming Lossiah's conduct intruded into her private medical records and he then disseminated the information.

 North Carolina does not recognize the public disclosure of embarrassing private facts as a tort. *Hall v. Post,* 323 N.C. 259, 372 S.E.2d 711 (1988). Thus, to the extent her claim is based on the public dissemination of her medical records, it is dismissed. The issue remains whether she has stated a claim for intrusion into her private affairs.

> "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

*Miller v. Brooks,* 123 N.C.App. 20, 26, 472 S.E.2d 350, 354 (1996) (quoting *Smith v. Jack Eckerd Corp.,* 101 N.C.App. 566, 568, 400 S.E.2d 99, 100 (1991)), *rev. denied,* 345 N.C. 344, 483 S.E.2d 172 (1997). This tort has only recently been recognized by North Carolina courts, but in discussing it in a hypothetical sense, the Court of Appeals has stated

> In our opinion, "intrusion" as an invasion of privacy is not involved in this case, and we express no opinion regarding the viability of such a claim. That tort does not depend upon any publicity given a plaintiff or his affairs but generally consists of an intentional physical or sensory interference with, or prying into, a person's solitude or seclusion or his private affairs. Some examples of intrusion include physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, per-

sistent telephoning, unauthorized prying into a bank account, and opening personal mail of another. Plaintiffs have not alleged that the information published was wrongfully obtained or produced evidence otherwise suggesting that the defendants have committed the kind of intrusion intrinsic to this tort.

*Hall v. Post,* 85 N.C.App. 610, 615, 355 S.E.2d 819, 823–24 (1987), *rev'd on other grounds,* 323 N.C. 259, 372 S.E.2d 711 (1988). Here, Plaintiff alleges that Lossiah wrongfully and intentionally obtained her medical records. In *Miller, supra,* the plaintiff's estranged wife hired a private investigator to install a surveillance camera in his home. The investigator hired a locksmith who produced a key for him and while the plaintiff was away, a camera was installed in his bedroom ceiling. He was filmed in his bedroom undressing, taking a shower and going to bed. The wife also advised postal authorities she was residing in plaintiff's home and began picking up his mail. She looked through the mail, disposed of some of it and returned other pieces to his mailbox. The Court of Appeals found this conduct was so highly offensive to a reasonable person as to constitute an invasion of privacy. "Plaintiff had every reasonable expectation of privacy in his mail and in his home and bedroom. A jury could conclude that these invasions would be highly offensive to a reasonable person." *Miller,* 123 N.C.App. at 26, 472 S.E.2d at 354. Likewise, the Court concludes for the purposes of a motion to dismiss that the Plaintiff has stated a claim for intrusion into private affairs which would be highly offensive to a reasonable person. Plaintiff had every expectation of privacy in her medical records and wrongfully obtaining and using those records would be highly offensive to a reasonable person. *See, e.g., Anderson v. Farr Assoc., Inc.,* 1997 WL 896407 (M.D.N.C.1997) (Intentionally forcing employee to participate in group therapy sessions and evaluation which resulted in his disclosure of deeply personal information sufficient to state a claim.).

The Magistrate Judge recommended dismissal of Plaintiff's cause of action for intentional infliction of emotional distress because the conduct of which she complains does not qualify as extreme and outrageous. Plaintiff objects to that determination.

A plaintiff who asserts a claim for intentional infliction of emotional distress must prove that the defendant engaged in "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." The second element may also be proven by a showing that the defendant acted with "reckless indifference to the likelihood" that his or her acts "will cause severe emotional distress."

*Miller,* 123 N.C.App. at 29–30, 472 S.E.2d at 356 (quoting *Dickens v. Puryear,* 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981)) (other citations omitted). In the *Miller* case, discussed *infra,* the North Carolina Court of Appeals found that breaking into the plaintiff's house to install a video camera and installing it was extreme and outrageous conduct. In *Chapman v. Byrd,* the Court of Appeals found the plaintiff had stated a claim for intentional infliction of emotional distress when the director of the Hoke County Emergency Medical Service repeated a rumor that a certain restaurant had an employee suffering from AIDS or HIV.

Here, the statements were allegedly made by the Director and Assistant Director ..., persons whose statements would be highly credible in the eyes of the citizens of the area, particularly in matters of public health. Given this credibility, the likelihood of harm caused by false assertions by EMS officials that "someone" has the AIDS virus was extremely high. Given these circumstances, we hold that the statements made by defendants ... can, as a matter of law, constitute extreme and outrageous conduct.

*Chapman by and through Chapman v. Byrd,* 124 N.C.App. 13, 20, 475 S.E.2d 734, 739 (1996), *rev. denied,* 345 N.C. 751, 485 S.E.2d 50 (1997). This Court finds, based on this recent case law, that Plaintiff's allegation that Lossiah intentionally obtained and disclosed her confidential medical records without her permission to insure she would not be offered employment constitutes extreme and outrageous conduct. The conduct was a severe intrusion into her medical records and the use of it by the director of the CDU gave credibility to the assertion that she should not be employed. As a result, Plaintiff has stated a cause of action in her fourth claim for relief.

Plaintiff has not objected to the remaining recommendations and the Court finds they are accurate. The Plaintiff's claim under FTCA has not survived and thus, this Court's original jurisdiction no longer exists. 28 U.S.C. § 1367(c)(3). Plaintiff's state law claims for intrusion into private affairs, for intentional infliction of emotional distress and the claim against Dugan alone for tortious interference with contract will be dismissed without prejudice to bringing these claims in state court.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the motion of the United States to dismiss is **ALLOWED;** and

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over the pendant state law claims.