IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-827

Filed: 17 March 2020

Buncombe County, No. 18 CV 5532

LISA M. TAUBE, Plaintiff,

v.

TAMARA "TAMMY" HOOPER, individually, and in her official capacity as Chief of Police for the City of Asheville; and CITY OF ASHEVILLE, Defendants.

Appeal by plaintiff from order entered 21 May 2019 by Judge W. Erwin Spainhour in Buncombe County Superior Court. Heard in the Court of Appeals 19 February 2020.

*John C. Hunter for plaintiff.*

*McGuire, Wood & Bissette, PA, by Joseph P. McGuire, for defendants.*

ARROWOOD, Judge.

Lisa M. Taube ("plaintiff") appeals from the trial court's dismissal of her defamation claims for failure to state a claim upon which relief can be granted, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2019). For the following reasons, we affirm.

I. Background

This case involves statements by Asheville Police Department Chief Tammy Hooper ("the Department" and "defendant Hooper") and the City of Asheville

concerning plaintiff's response to an incident wherein one of the officers she supervised used excessive force to arrest an individual. As a result of these statements, plaintiff filed suit against defendants, asserting claims of defamation and intentional infliction of emotional distress. The allegations in plaintiff's complaint are summarized as follows.

Plaintiff was employed as a Sergeant with the Department from 2005 until her resignation on 31 August 2018. On the night of 24 August 2017, plaintiff was the supervisor on duty for the Department's Downtown Unit. During her shift, plaintiff was notified that Officer Christopher Hickman, one of her reporting officers, had used physical force incident to the arrest of an individual. Shortly after midnight, plaintiff arrived at the scene and took statements from Officer Hickman and the arrestee. These statements were recorded on her body-worn camera and uploaded to the Department's computer server later that night. Plaintiff also arranged for photographs to be taken of the arrestee to document potential injuries.

Because plaintiff was soon due to depart on a scheduled two-week family vacation to Michigan, which included a wedding at 8:00 p.m. later that day, she concluded her initial investigation and reporting at this point and forwarded the information she had gathered with a reminder of her planned leave to her supervisors and reporting officers. She notified them that she had initiated the process of creating

the "Blue Team Report," the reporting procedure for use of force incidents required by Department policy. Defendant then departed on her scheduled vacation.

On 25 August 2017, the Department suspended the Blue Team Report procedure and launched a Professional Standards Section administrative investigation into the arrest, use of force, and Officer Hickman's conduct. This investigation relieved plaintiff of further responsibility in preparing the Blue Team Report.

Months later, Officer Hickman's use of force became the subject of local media attention and public outcry as a perceived instance of police brutality. On 28 February 2018, the Asheville Citizen-Times first brought the incident to the public's attention by acquiring and publishing the bodycam footage of the arrest. This news coverage made the Department, defendant Hooper, and the City of Asheville the subject of considerable public criticism. Other information emerged tending to further subject defendant Hooper to criticism for her months-delayed response to the incident.

As the news story continued to develop, on 5 March 2018 the City of Asheville released a written statement to the public concerning the incident:

> That Supervisor, however, despite being told by Hickman that he had struck [the arrestee] in the head with his Taser, and despite [the arrestee] saying that he was choked, did not immediately forward any information or complete notes of these interviews with Hickman and [the arrestee], and did not review the body camera footage that

evening. Because of conduct related to this incident, that Supervisor ultimately received discipline for unsatisfactory performance and was ordered to undergo additional training.

Later that day, defendant Hooper gave an interview to a local television station. She made the following statement:

There were some issues with the Supervisor who showed up to review the incident. Our expectations, our policy is pretty clear about what the Supervisor's responsibilities are, those are laid out pretty clearly in the [written statement] that was issued. All those things didn't happen. And so I think that the intention of the Supervisor was to do a more thorough review later or something to that effect, but that's not acceptable. So the Supervisor dropped the ball on the response to that, and was disciplined in response.

Based on these statements, local journalists and the public soon discovered plaintiff's identity as "the Supervisor." Ever since these statements, plaintiff has been subjected to public scorn and hateful electronic communications.

Plaintiff resigned from the Department on 31 August 2018. Pursuant to her resignation, defendant Hooper submitted a legally mandated "Form F-5, *Affidavit of Separation*" to the North Carolina Criminal Justice Education and Training Standards Commission. On the form, defendant Hooper checked a box indicating that "[the Department] **IS** aware of any investigation(s) in the last 18 months concerning potential criminal action or potential misconduct by this officer." (emphasis in complaint). The Affidavit of Separation form is a document that is

customarily viewed by law enforcement entities in determining whether to hire a candidate for a law enforcement position.

On 9 May 2019, defendants moved to dismiss plaintiff's claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief could be granted. The trial court granted this motion and dismissed plaintiff's claims. Plaintiff timely appealed.

## II.    Discussion

Plaintiff argues that the trial court erred in dismissing her claims of libel and slander *per se* pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[1] For the following reasons, we disagree.

### A.    Standard of Review

"We review appeals from dismissals under Rule 12(b)(6) de novo." *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 448, 781 S.E.2d 1, 8 (2015) (citation omitted).

> Dismissal of an action under Rule 12(b)(6) is appropriate when the complaint fail[s] to state a claim upon which relief can be granted. [T]he well-pleaded material allegations of the complaint are taken as true; but conclusions of law or unwarranted deductions of fact are not admitted. When the complaint on its face reveals that no law supports the claim, reveals an absence of facts sufficient to make a valid claim, or discloses facts that necessarily defeat the claim, dismissal is proper.

---

[1] Plaintiff has abandoned any challenge to the trial court's dismissal of her other claims by failing to argue them in her appellate briefs. N.C.R. App. P. 28(a) (2020) ("Issues not presented and discussed in a party's brief are deemed abandoned.").

*Id.* at 448, 781 S.E.2d at 7-8 (internal quotation marks and citations omitted).

### B. Claims of Libel *Per Se* and Slander *Per Se*

"In order to recover for defamation, a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Tyson v. L'Eggs Prods., Inc.*, 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987) (*citing Hall v. Publishing Co.*, 46 N.C. App. 760, 266 S.E.2d 397 (1980)).

> The term defamation covers two distinct torts, libel and slander. In general, libel is written while slander is oral. Libel *per se* is a publication which, when considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace. Slander *per se* is an oral communication to a third person which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease. When defamatory words are spoken with the intent that the words be reduced to writing, and the words are in fact written, the publication is both slander and libel.

*Phillips v. Winston-Salem/Forsyth Cty. Bd. of Educ.*, 117 N.C. App. 274, 277-78, 450 S.E.2d 753, 756 (1994) (internal quotation marks, alterations, and citations omitted).

In reviewing whether a plaintiff has stated a claim of defamation *per se*, the allegedly defamatory statement "alone must be construed, stripped of all

insinuations, innuendo, colloquium and explanatory circumstances. The [statement] must be defamatory on its face within the four corners thereof." *Renwick v. News & Observer Pub. Co.*, 310 N.C. 312, 318-19, 312 S.E.2d 405, 409 (internal quotation marks and citation omitted), *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121 (1984). "The question always is how would ordinary men naturally understand the [statement.]" *Id.* at 318, 312 S.E.2d at 409 (citation omitted).

### 1.    Statements Made to the Press

In the instant case, plaintiff alleges three statements by defendants were defamatory *per se*. The first two statements plaintiff alleges were defamatory *per se* were statements defendants provided to local media outlets. The essence of these statements was that "the Supervisor who showed up to review" Officer Hickman's use of force had failed to follow the department's reporting policy and "that Supervisor ultimately received discipline for unsatisfactory performance and was ordered to undergo additional training."

The trial court did not err in dismissing plaintiff's claims of libel and slander *per se* because these statements do not sufficiently identify plaintiff as their subject, thus lacking the "of or concerning plaintiff" element of a viable defamation claim. "In order for defamatory words to be actionable, they must refer to some ascertained or ascertainable person and that person must be the plaintiff. If the words used contain no reflection on any particular individual, no averment can make them dafamatory

[sic]." *Arnold v. Sharpe*, 296 N.C. 533, 539, 251 S.E.2d 452, 456 (1979) (citation omitted).

We find the facts in the instant case comparable to those of *Chapman v. Byrd*, 124 N.C. App. 13, 475 S.E.2d 734 (1996). In *Chapman*, one of the defendants told his coworkers to avoid dining at a certain restaurant in a shopping center because " '[he] heard someone over there has AIDs [sic].' " *Id.* at 15, 475 S.E.2d at 736. Nine people worked at the shopping center at the time, and the defendant did not further specify which person he believed had AIDS. *Id.* These nine workers sued the defendant for defamation, alleging this statement defamed them each individually. *Id.*

Distinguishing the case from *Carter v. King*, 174 N.C. 590, 592, 94 S.E. 4, 5 (1917) (holding plaintiff juror stated viable defamation claim by alleging defendant stated "there was one man on the jury that was not bribed"), this Court held that the plaintiffs had not stated a viable defamation claim because the statement did not adequately identify them. *Chapman*, 124 N.C. App. at 16-18, 475 S.E.2d at 737-38. We reasoned that "here the statements concern only one person in a group of nine, *i.e.*, the statements referred to 'someone.' Plaintiffs have not cited nor have we found any North Carolina case holding that any one person of a group of nine may bring a defamation action based on statements made about a single unidentified member of the group. . . . Since the alleged statements referred only to 'someone' in a group of nine, they clearly do not refer to some, most or all of the group." *Id.* at 16-17, 475

S.E.2d at 737-38 (citing *Arcand v. Evening Call Publishing Co.*, 567 F.2d 1163, 1165 (1st Cir. 1977) (holding defamatory statement referring to one unspecified police officer in a group of twenty-one was not "of or concerning" each individual officer in group).

In the instant case, the allegedly defamatory statements referred to "the Supervisor who showed up to review the incident." Plaintiff points to the fact that local media outlets and people following the story ascertained that she was the referenced supervisor soon after defendants made the statements. However, we cannot consider this fact in reviewing plaintiff's claims that these statements were defamatory *per se*. We are limited to an interpretation of only the language within the statements' four corners. *Renwick*, 310 N.C. at 318, 312 S.E.2d at 409 (citation omitted). Here, similar to *Chapman*, defendants' statements to the press concern one unidentified supervisor in the Asheville Police Department, of which there are many, that responded to Officer Hickman's use of force incident.

The only case we are able to find in which the surrounding context was remotely considered in reviewing whether an allegedly *per se* defamatory statement was "of or concerning plaintiff" is *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 568 S.E.2d 893 (2002). In that case, a campaign advertisement accused "Dan Boyce's law firm" of unethical practices. *Id.* at 33, 568 S.E.2d at 900. In holding that each plaintiff lawyer of the firm stated a claim for libel *per se*, we reasoned that the

statement "maligned each attorney in the firm, of which there [were] only four. Moreover, . . . identification of the law firm of Boyce & Isley, PLLC was readily ascertainable from the reference to 'Dan Boyce's law firm.' " *Id.*

The instant case is distinguishable from *Boyce & Isley, PLLC*. Defendants' statements do not malign every member of a small group whose members are readily identifiable by the community at large. Rather, the statements refer to the one "supervisor," of which there are many in the Department, that responded to the reported incident of force by a subordinate officer. Unlike "Dan Boyce's law firm," whose named member was a candidate running a statewide campaign for Attorney General, *id.* at 27, 568 S.E.2d at 896-97, we do not believe that an ordinary person hearing defendants' statements about "the supervisor" on duty would be able to readily ascertain plaintiff's identity.

Because these allegedly defamatory statements do not sufficiently identify her as their subject, plaintiff has failed to plead viable claims of libel and slander *per se*. The trial court did not err in dismissing these claims.

2.    Statement in Mandatory Affidavit of Separation

The third statement underlying plaintiff's claims of libel *per se* was in the Affidavit of Separation submitted by defendant Hooper to the North Carolina Criminal Justice Education and Training Standards Commission. In this mandatory report detailing the nature of plaintiff's subsequent separation from the Department,

defendant Hooper checked a box stating that "[the Department] **IS** aware of any investigation(s) in the last 18 months concerning potential criminal action or potential misconduct by this officer."

As an initial matter, we note that plaintiff's complaint has overcome the hurdle presented by the qualified privilege claimed by defendants at the pleadings phase because she alleges malice in defendant Hooper's publication of the statement. *See Andrews v. Elliot*, 109 N.C. App. 271, 275-76, 426 S.E.2d 430, 433 (1993) (holding defense of qualified privilege in publishing statement does not defeat claim of defamation *per se* at pleadings stage where complaint alleges actual malice in publication).

Plaintiff argues that this statement was libelous *per se* because it tended to impeach her in her profession as a law enforcement officer. We find that the truth of the referenced statement defeats plaintiff's claim. Furthermore, the referenced statement is not *per se* actionable.

Plaintiff's complaint acknowledges that she "had been the subject of an investigation into potential unsatisfactory job performance as stated in the Written Warning she had received." The complaint states that the Department's Professional Standards Section investigated Officer Hickman's use of force and the surrounding circumstances, and that "[a]s a result of the finding of the investigation, a recommendation was made to sustain an allegation of Unsatisfactory Performance

against [plaintiff,]" and plaintiff was subsequently disciplined with a written warning and brief suspension without pay. Thus, the statement that the Department was aware of an investigation into plaintiff's potential misconduct was established as true by the allegations of the complaint. Truth is an absolute defense to an allegation of defamation. *Holleman v. Aiken*, 193 N.C. App. 484, 496-97, 668 S.E.2d 579, 587-88 (2008). Where plaintiff's own pleadings establish the truth of an allegedly defamatory statement, dismissal per Rule 12(b)(6) is proper. *Id.*

Furthermore, a statement that plaintiff had been investigated for "potential misconduct" does not tend to impeach her in her profession as a law enforcement officer as a matter of law. We have previously held more concrete accusations concerning actual, rather than potential, workplace misconduct not actionable *per se*. *See, e.g., Pierce v. Atl. Grp., Inc.*, 219 N.C. App. 19, 34, 724 S.E.2d 568, 578-79 (2012) ("We do not believe that Plaintiff's complaint, alleging that Defendant 'falsely contended' that Plaintiff 'falsified his time card,' or reported Plaintiff to the Nuclear Regulatory Commission sets forth a cause of action for libel *per se* sufficient to survive Defendants' Rule 12(b)(6) motion.") (alterations omitted); *Stutts v. Power Co.*, 47 N.C. App. 76, 78, 82, 266 S.E.2d 861, 863, 865 (1980) (holding statement by plaintiff-employee's supervisor that he was "fired . . . for a dishonest act and falsifying the records" by punching time card on day of absence from work not actionable *per se* as professional impeachment). The statement that plaintiff was investigated for

"potential misconduct" is far more vague, and does not allege the existence of any actual misconduct in and of itself. Therefore, the trial court did not err in dismissing plaintiff's libel *per se* claims based upon defendant Hooper's statement in the Affidavit of Separation.

### III. Conclusion

For the foregoing reasons, we find no error in the trial court's dismissal of plaintiff's claims pursuant to Rule 12(b)(6).

AFFIRMED.

Judges DILLON and BERGER concur.